232 A.2d 385.

FREDERICK TANTIMONACO *et ux. vs.* ZONING BOARD OF REVIEW OF THE TOWN OF JOHNSTON.

AUGUST 3, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is a petition for certiorari which seeks to quash a decision of the respondent board approving the erection of a gasoline service station in a district rezoned residential subsequent to the issuance of the building permit.

The action here under review was taken by the board after a hearing held pursuant to our remand in *Tantimonaco* v. *Zoning Board of Review,* 100 R. I. 615, 218 A.2d 480. The writ issued and the records on which our deci-

sion in that case was reached were incorporated by the board in the proceedings presently under review, and as thus combined they were duly certified to this court for our examination.

It appears therefrom that in October, 1964 Joseph E. and Rosina Golini, individually, and as fiduciaries under the will of William J. Golini, were the owners of an unimproved parcel of land located in a business D district in the Town of Johnston. Within such district a gasoline service station was a *permitted use subject to the approval of* "* * * the location and layout thereof and the plans by the Zoning Board of Review."

The owners filed an application with the board for such approval and, after a hearing of which there had been no public notice, the board granted the application and the building inspector issued a permit on November 16, 1964. When neighboring property owners were made aware of this by reason of work being done on the subject premises, they appealed to the board from the issuance of the building permit. This appeal was taken February 12, 1965.

At the hearing on said appeal, March 25, 1965, the applicants were permitted to withdraw their original application without prejudice and the board revoked the original permit. Thereafter, March 29, 1965, the Golinis filed a new application on which, after due notice, a hearing was held April 29, 1965. The board again voted to approve, May 14, 1965, following which the building inspector issued Permit No. 8940 on May 20, 1965.

From that decision petitioners came to this court by way of certiorari, filing their petition on June 8, 1965. On June 14, 1965, the Johnston Town Council adopted an amendment to the zoning ordinance which rezoned the area within which the subject property is located from Business D to Residence A, in which latter district a gasoline service station is not a permitted use.

Subsequent to the May 14, 1965, decision of the board and issuance of the building permit by the building inspector on May 20, 1965, as aforesaid, the decision of this court in *Shalvey* v. *Zoning Board of Review,* 99 R. I. 692, 210 A.2d 589, was filed on May 25, 1965.

That case was concerned with the validity of building permits issued for the construction of multi-family dwellings at a time when such dwellings were a permitted use, but which permits came under attack because the area in question had been rezoned before the work for which the permits had been issued was completed. In *Shalvey* we concluded that justice and equity required this court to accept the proposition that the holder of a permit authorizing a use lawful when it was issued may, by acting in good faith in reliance thereon, acquire a right in the use authorized which may not be divested or impaired by a subsequent amendment to the zoning ordinance making that use unlawful.

We concluded in 99 R. I., at page 699, and in 210 A.2d at page 593, "It is then our opinion that building permits lawfully issued for a permitted use should be immune to impairment or revocation by reason of a subsequent amendment to the zoning ordinance when the holders thereof, acting in reliance thereon in good faith, initiate construction in some reasonably substantial measure or incur some reasonably substantial obligation promoting such construction."

Application of the rule thus laid down, however, obviously called for a factual determination of the extent to which substantial performance was undertaken in reliance on the permit in good faith. It appearing that the Warwick board of review had made no such determination, we remanded the cause to that board for such purpose.

Thus, when *Tantimonaco* v. *Zoning Board of Review, supra,* was argued before us, it became apparent that the determinative factors were similar to those in *Shalvey.* The

Johnston board, as the Warwick board, having made no factual determination of the expenses and obligations incurred by the Golinis as evincing good faith, we quashed the decision of the Johnston board and remanded the cause for a hearing by it on the question of the Golinis' expenses, obligations and good faith. In compliance with our remand the board conducted such a hearing on May 19, 1966, and, in effect, voted to validate Permit No. 8940.

The record before us discloses that, at the May, 1966 hearing, testimony of the owner Joseph E. Golini and Armando Lusi, an engineer and president of A. F. Lusi Construction, Inc., was received into evidence, as were several documents, site maps and building plans. This oral and documentary evidence establishes that up to and including the payment of $79 for the building permit issued May 20, 1965, the owners expended or incurred obligations totaling $4,415.65. Of this total $2,889 was incurred for work and expenses naturally relating to the preparation of the land as a suitable site leading to the proposed construction, and the remainder represents legal fees and expenses incurred in connection with the application and hearing before the board.

There is testimony that in September, 1964, when a gasoline service station was a permitted use, applicants engaged the services of Armando Lusi and his company to clear the land and prepare site and building plans for the consideration of the board pursuant to the requirements of the ordinance. Joseph E. Golini was generally uncertain as to the dates representing various stages of progress, but the record discloses that the aborted permit was issued November 16, 1964, and that the work went forward thereafter into sometime in January, 1965.

Additionally, there was received in evidence applicant's affidavit as to the total expenses of $4,415.65 and the execution of a contract on May 24, 1965, with A. F. Lusi Con-

struction, Inc., for the construction of the proposed gasoline service station at a cost of $39,000.

Armando F. Lusi testified in detail as to the clearing of the land which was heavily wooded, and as to preparation of the site plans; further, he itemized the cost of the work performed. He also testified that he had procured Texaco Inc., as lessee, to whose specifications the proposed station would be built. The financing, he stated, was to be handled by the First National Bank of Boston with which he helped make arrangements for a mortgage, but he did not know whether the mortgage had ever been consummated. Quite candidly, he explained that for the work already performed and for which the owners had not yet paid, he had a legal right to recover, but doubted that he could collect the 15 per cent profit on the $39,000 construction figure if, because the permit were not granted, the station was never constructed.

The record clearly establishes that with the signing of the construction contract May 24, 1965, four days after the first valid permit was issued, the Golinis incurred no further obligations, other than those for legal services and expenses incidental thereto.

The petitioners argue that on this record it is clear that the subsequent decision of the board on September 19, 1966, is illegal and should be quashed. In support thereof they make several contentions, one of which is so clearly without merit as to be disposed of at once. It is, that by the terms of the Johnston ordinance, a building permit expires if not acted upon within six months. No work having been done within the six months next succeeding the permit issued May 20, 1965, they contend it was automatically vacated or revoked.

As heretofore noted, petitioners challenged the validity of that permit by seeking a review of the board's decision with the filing of their petition for certiorari on June 8,

1965. Although the filing of such a petition does not act as a stay, G. L. 1956, §45-24-20, common prudence understandably acts as a brake against incurring obligations, the benefits of which would be cancelled by an adverse decision of this court. Apart from the question as it may be affected by a change in the zoning regulations, we think it clear that the requirement of activating a permit set forth in an ordinance does not apply during such time as the legality of a permit is open to question by reason of litigation amounting to an appeal from the issuance thereof.

In giving its decision, the board stated that pursuant to our remand the hearing of May 19, 1966, was held to determine the extent to which the applicants in good faith either:

"(a) initiated construction of said Gasoline Station in a reasonably substantial measure or;

"(b) incurred substantial obligations in preparation of promoting the same * * *."

Enumerating the expenses heretofore mentioned, the board then proceeded to find that applicants had — in good faith and in reliance on the permit issued pursuant to the board's decision of May 14, 1965 — incurred substantial obligations; and in further reliance on said permit entered in good faith into a binding contract with A. F. Lusi Construction, Inc.

The petitioners contend that these findings are unsupported by competent evidence. In this regard it must be conceded that other than those for legal services and expenses, applicants' financial obligations were incurred prior to the issuance of the permit. The petitioners argue that legal fees and expenses do not qualify as those expenses which go to measure an applicant's equity or promote the construction for which the permit was issued, citing *MacKenzie* v. *Town Planning and Zoning Comm'n,* 149 Conn. 678, 183 A.2d 619. If this proposition is accepted, it follows that the instant record is barren of evidence that ap-

plicants incurred any financial obligations in reliance on the permit.

Furthermore, petitioners also argue that the president of the Lusi Construction Company conceded that the construction contract was not binding and would not constitute an obligation to which applicants were committed if construction of the station were abandoned for lack of a permit.

We think there is merit in both of these arguments. The force of their position with regard to the Lusi Construction contract is self-evident. The board clearly misconceived the extent of applicants' obligation thereunder. With regard to legal fees and related expenses, it is conceivable that in a given case they could be so substantial as to give an appearance of equity in the permittee, although no other expenses or obligations were incurred.

However, the board also found that applicants, in good faith, incurred substantial obligations in the nature of promoting construction. Its decision rests in part on this finding and it is clearly supported by the evidence. As heretofore noted, the board in reaching its decision prefaced it with a statement that the hearing was held pursuant to our opinion in *Tantimonaco* v. *Zoning Board of Review*, *supra*.

There, we pointed out that in the *Shalvey* case, unlike the instant cause, the applicant seeking a building permit was not required to incur substantial obligations in preparation for obtaining the board's approval. Having this circumstance and the significance thereof in mind, it was stated in *Tantimonaco* at page 620, and in 218 A.2d 480 at page 483 that, "We refer specifically to expenses incurred in preparing for the issuance of a permit. For example, in the case at bar there was no need of presenting such evidence to the zoning board under the existing ordinance when it heard and granted the application." Query, how-

ever: would such evidence become material and possibly determinative should a zoning change as here occurred be adopted? Indicating that in all the circumstances a determination of the equities might well turn on such evidence, still we noted, "In 1 Yokley, Zoning Law and Practice (3d ed.), §9-5, at 409, the author states: 'Current trends in the decisions indicate that rights existing under an ordinance may not be swept aside by a subsequently enacted zoning ordinance, where, in reliance on the existing ordinance, expenses are incurred in preparing for the issuance of a permit.' "

Continuing, we examined the reasoning of the Illinois court in *Nott* v. *Wolff,* 18 Ill.2d 362, 163 N.E.2d 809, cited in *Yokley, supra,* and equated it with the equitable principle inherent in *Shalvey* v. *Zoning Board of Review, supra.*

In the *Nott* case a property owner had negotiated a long-term lease for the operation of a motel, engaged architects and proceedings were begun to secure a permit when, by virtue of an amendment to the zoning ordinance, a motel ceased to be a permitted use. The Illinois court held that such a change in position had taken place as would authorize a writ of mandamus to compel the issuance of the permit.

Following the clear implication of our approval of the equitable principle on which the *Nott* case turned, the board of review in the instant case took cognizance of the expenses and obligations incurred by applicants as preliminary to promoting construction of the service station, found them to be substantial and made in good faith, and voted to approve.

The petitioners urge however that, even though the doctrine of substantial obligations incurred in good faith prior to the issuance of the permit be accepted, the rule is not applicable in the instant case. They base this argument on the fact that the record establishes that a preponderance of applicants' qualifying obligations were incurred in

reliance on the defective permit issued November 16, 1964, pursuant to a hearing for which no valid public notice had been given. It must be conceded that much of the work for which applicants became responsible was performed between the issuance of the November 16, 1964, permit and sometime in January 1965, when work stopped because of the appeal to the board from the issuance of that permit.

Thus, arguing that substantial obligations could not be incurred in good faith in reliance on a defective permit and that the substantial obligations which were incurred were not required as preliminary to the obtaining of a valid permit, it is petitioners' position that the decision of the board is unsupported by competent evidence and should be quashed.

It is not suggested however that applicants were in any way responsible for the defective proceedings which led to the issuance of the November 16, 1964 permit. It is in a balancing of the equities that applicants' rights to proceed must now be determined. Surely, an error for which applicants were in nowise responsible should not now be so placed in the scales as to support the proposition for which petitioners contend.

Therefore we hold that the September 19, 1966, board decision — which in effect sustains the May 20, 1965, issuance of a permit by the building inspector — is supported by competent evidence and is consistent with the principles of justice and equity laid down in *Shalvey* v. *Zoning Board of Review, supra.*

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified ordered returned to the respondent board with our decision endorsed thereon.

*Edmund Wexler,* for petitioners.

*John P. Bourcier,* Town Solicitor, *Louis A. Petrarca, Jr., Joseph A. Bevilacqua,* for respondent.