DECISION
Before the Court is an appeal from a decision of the Providence Zoning Board of Review ("Board") which affirmed the decision of the Director of the Department of Inspections and Standards ("Director") to deny plaintiffs' request to use the property at 31-35 Aborn Street, Providence, Rhode Island for adult entertainment. This Court has jurisdiction of this appeal pursuant to R.I. Gen. Laws § 45-24-69. For the reasons set forth in this decision, this Court denies the plaintiffs' appeal and affirms the Board's decision.
 Facts/Travel
The plaintiff, JR Associates ("JR"), is a Rhode Island partnership with a principal place of business located at 112 Mathewson Street, Providence, Rhode Island. Plaintiffs Jodi DiRaimo ("DiRaimo") and Richard Shappy ("Shappy") are principals in JR. DiRaimo and Shappy own the property, which is the subject of this controversy, located at 31-35 Aborn Street in Providence (the "Property"). The Property, which is further described as Tax Assessor's Plat 25, Lot 330, is located within a D-1, Downtown Central Business District. The Property contains a building in which plaintiffs operate a nightclub/lounge known as the Satin Doll Lounge ("Satin Doll").
DiRaimo and Shappy acquired a deed to the Property in February of 1990. (Tr. dated Nov. 4, 1997 at 3.) Mr. Shappy testified that "The Zone," which he described as a nightclub, operated at that location from February of 1990 until October of 1990. (Id. at 3.)
In the latter part of 1990, Raymond Fay took possession of the business premises on the Property. He closed the business in December of 1990 for renovations. (Deposition of Raymond Fay at 5.) In January of 1991, Mr. Fay re-opened the business as "Twelve Caesars." (Id. at 4-5.) Mr. Fay testified that Twelve Caesars was a show lounge which featured both male and female exotic dancers. (Id. at 5.) Mr. Fay stated that Twelve Caesars had "Adam and Eve" productions. (Id.) He stated that the male and female dancers would disrobe down to a G-string and that the female dancers who performed at the lounge engaged in topless dancing. (Id. at 6.) In operating Twelve Caesars, Mr. Fay obtained various entertainment licenses for the Property.[1]
In April of 1991, JR, as owners, and Twelve Caesars appeared before the Board to acquire permission to be relieved from Zoning Ordinance[2]
Section 53A, under Sections 91 and 92, in proposing to use the Property, located at 31-35 Aborn Street, for live entertainment. As of the time of filing of the aforementioned application, live entertainment was not a permitted use in a C-3 zone. Twelve Caesars was located in a C-3 zone.
A hearing was held on or about April 8, 1991. On or about April 19, 1991, the Board issued Resolution No. 7371. In its decision, the Board granted the petitioners' request for a use variance; however, the resolution expressly prohibited adult entertainment on the Property. The specific findings of the Board provided:
 "1. Restaurants and/or lounges with live entertainment are located throughout the downtown area. The proposed use of the building as a lounge with live entertainment is consistent with the comprehensive zoning amendment presently under consideration.
 2. The proposed use will not have an adverse effect on the surrounding area provided the live entertainment permitted on the premises does not include `adult entertainment.'
 3. Adult entertainment is defined as exposure by an individual, employee, operator or owner of human genitals, pubic regions, buttocks, anus or female breast below a point immediately above the tops of the a[re]olae for viewing by patrons.
 RESOLVED: That the Zoning Board of Review does hereby make a variance of Section 53-A under Sections 91 92 of the Zoning Ordinance and does hereby grant the application of JR Associates, owner, 12 Caesar's, Ltd., applicant lessee; substantially in accordance with the plans and plot plans filed with said Board. Said application is granted for a lounge with live entertainment with an express prohibition against adult entertainment. A copy of said plans are hereby made a part of this Resolution and must be filed with the Department of Inspection and Standards by the owner or his/her representative."
Resolution No. 7371 (April 19, 1991).
Thus, in accordance with Resolution 7371, Twelve Caesars was allowed to present live entertainment but not adult entertainment. It is undisputed that at the time of the April 1991 hearing, there was no mention of adult entertainment in the Ordinance.
In October of 1991, the City of Providence revised its Zoning Ordinance to define the term "adult entertainment" and to restrict it to specific zones within the city. The newly amended provision of the Ordinance, section 1000.3, expressly prohibited adult entertainment in a D-1 zone, which is the type of zone in which the Property is located. In accordance with that provision, adult entertainment was defined as follows:
 Adult Entertainment: "Any commercial establishment or business where an individual, employee, or operator or owner exposes human genitals, pubic regions, buttocks, anus or female breast below a point immediately above the tops of the areolae for viewing by patrons."[3]
Mr. Shappy testified that he began renovations to the Property at some point in the latter part of 1992. (Tr. dated Nov. 4, 1997 at 9.) The Satin Doll was opened in March of 1993. (Id. at 10.) It is undisputed that the Satin Doll presents nude dancing.
In May of 1993, Richard Shappy and Jodi DiRaimo were summoned to appear before the Providence Board of Licenses to show cause why their entertainment license should not be revoked for violating section 1000.3 of the Ordinance entitled "Adult Entertainment." Plaintiffs DiRaimo and Shappy, d/b/a The Satin Doll Lounge, filed a declaratory judgment action requesting that section 1000.3 be struck down as unconstitutional. In 1996, Judge Israel declared that section 1000.3 of the Ordinance is constitutional — a decision which the Rhode Island Supreme Court affirmed. See DiRaimo, supra.
On or about January 7, 1997, plaintiffs DiRaimo and Shappy submitted a written request to the Director of the Department of Inspections and Standards contending that the Property enjoyed a lawful nonconforming use for the presentation of adult entertainment. On or about February 18, 1997, the Director considered the plaintiffs' request for a legal nonconforming use of adult entertainment at the Property. On or about February 28, 1997, the Director confirmed the denial of plaintiffs' request. As such, plaintiffs filed an appeal with the Board. Hearings were held on September 30, 1997, November 4, 1997, and December 10, 1997.
On or about February 23, 1998, the Board issued a decision denying plaintiffs' appeal and affirming the decisions of the Director. In its decision, the Board concluded that the Director was correct in denying the use of the Property for adult entertainment. After a review of the entire record, the Board made the following findings:
 "1. The Director's decision is supported by reliable, substantial and probative evidence contained in the record and does not prejudice the rights of the Owner.
 2. The Appellant gave no proof indicating that adult entertainment was ever allowed on the Parcel.
 3. The Providence Board of Licenses erred in issuing licenses for live entertainment which was against the regulations of the Providence Zoning Ordinance at Section 805. Any and all licenses that were issued are null and void.
 4. The Zoning Board of Review denied the Owner's application for adult entertainment under Resolution No. 7371 dated April 19, 1991.
 5. The only evidence given by the Appellant that adult entertainment existed on the Parcel was verbal. The evidence given by the Appellant was not supported by record evidence. There were no independent witnesses to testify that they saw topless [dancing] before 1991.
 6. The Board finds that the Owner has been using the Parcel for adult entertainment in violation of the Zoning Ordinance."
The plaintiffs have filed a timely appeal from the Board's decision, and that appeal is properly before this Court. The plaintiffs argue that the Board exceeded its authority in restricting the use of the Property to a lounge with live entertainment as provided in Resolution No. 7371 (April 19, 1991).
Further, the plaintiffs contend that the Satin Doll enjoys a legal nonconforming use for the presentation of adult entertainment at the premises located at 31-35 Aborn Street in Providence. In support of this argument, plaintiffs contend that Twelve Caesars presented adult entertainment from October of 1990 through October of 1992. Plaintiffs claim that the disco/gogo licenses issued to Twelve Caesars and Jodi DiRaimo during this time period permitted the presentation of adult entertainment. Finally, plaintiffs argue that the doctrine of estoppel precludes the City from prohibiting adult entertainment as a lawful nonconforming use of the Property.
Defendants City of Providence and the Zoning Board of Review counter that the Board did not exceed its authority when, in its 1991 Resolution, it restricted the use of the Property to a lounge with live entertainment, with an express prohibition against adult entertainment. Indeed, defendants maintain that the statute of limitations prohibits plaintiffs from appealing the 1991 decision. The defendants further argue that there is substantial evidence to support the Board's decision. Specifically, defendants contend that the plaintiffs have failed to prove that there was adult entertainment at the premises prior to the 1991 Ordinance or that the presentation of adult entertainment on the Property was a lawful use.
Further, defendants argue that even if adult entertainment were a legal nonconforming use, plaintiffs abandoned that use.
 Standard of Review
In reviewing a decision of the Zoning Board of Review on appeal, this Court is guided by the dictates of R.I. Gen. Laws § 45-24-69(D), which provides in pertinent part as follows:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court, when reviewing a decision of a zoning board of review, must examine the entire certified record to determine whether substantial evidence exists to support the board's findings. Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence," as used in this context, means "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 508, 388 A.2d 821, 824-25 (1978)). The essential function of the zoning board of review is to weigh evidence, with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint before substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "can conscientiously find" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257, 260 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501, 509,388 A.2d 821, 825 (1978)).
 Resolution No. 7371
The plaintiffs argue that the Board exceeded its authority in restricting the use of the Property to a lounge with live entertainment, but without adult entertainment, as provided in Resolution No. 7371 (April 19, 1991). Specifically, plaintiffs argue that the testimony before the Board in April of 1991 was insufficient to support this restriction, as there was no probative or relevant evidence presented regarding adult entertainment or the effect thereof on other permitted uses in a C-3 zone. The plaintiffs assert that the First Amendment requires the Board to show an appropriate factual basis for the restriction. The plaintiffs add, that at the time of the hearing in April of 1991, there was no distinction among entertainment, adult entertainment, and incidental entertainment in the Ordinance. The plaintiffs contend that in defining adult entertainment, in the absence of a definition in the Ordinance, the Board engaged in improper legislation.
The defendants disagree with plaintiffs' position, arguing that the Board did not exceed its authority when, in the 1991 Resolution, it restricted the use of the Property. Furthermore, defendants contend that the statute of limitations prohibits plaintiffs from appealing the 1991 decision. Section 45-24-69(A) of the Rhode Island General Laws provides procedural rules for appealing a decision of a zoning board of review to the Superior Court. According to the statute:
 "an aggrieved party may appeal a decision of the zoning board of review to the superior court for the county in which the city or town is situated by filing a complaint setting forth the reasons of appeal within twenty (20) days after the decision has been recorded and posted in the office of the city or town clerk."
R.I. Gen. Laws § 45-24-69(A). Statutes which prescribe the time and manner of procedure to be followed by a litigant who is attempting to obtain a review of his or her case in an appellate tribunal are to be strictly construed. Seibert v. Clark, 619 A.2d 1108, 1111 (R.I. 1993); Potter v. Chettle, 574 A.2d 1232, 1234 (R.I. 1990). The failure to file an appeal from a zoning board decision within the statutory time period renders the decision final and immune from a later attack. Ryan v. Zoning Board of Review of New Shoreham, 656 A.2d 612 (R.I. 1995).
After a review of the record and pertinent case law, this Court concludes that plaintiffs cannot now appeal Resolution No. 7371, which was issued on April 19, 1991. As plaintiffs failed previously to file a timely appeal to challenge the Resolution, under the doctrine of administrative finality, they may not now attack the Board's 1991 decision. See Audette v. Coletti, 539 A.2d 520, 521-22 (R.I. 1988) ("[w]here a zoning board hears an application for relief and denies it, the doctrine of administrative finality bars a subsequent application for the same relief absent a showing of a change in material circumstances in the time intervening between the two applications").
 Legal Nonconforming Use
The plaintiffs also contend that the Satin Doll enjoys a legal nonconforming use for the presentation of adult entertainment at the premises located at 31-35 Aborn Street in Providence. In support of this argument, plaintiffs claim that Twelve Caesars presented adult entertainment from October of 1990 through October of 1992. The plaintiffs argue that the disco/gogo licenses issued to Twelve Caesars and Jodi DiRaimo permitted the presentation of adult entertainment. The defendants disagree with plaintiffs' position, arguing that plaintiffs have failed to prove that there was adult entertainment on the Property before the 1991 Zoning Ordinance or that the presentation of adult entertainment on the Property was a lawful use.
Section 45-24-31(49) of the Rhode Island General Laws defines the term "nonconformance." According to the statute, a nonconformance is "a building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment." R.I. Gen. Laws § 45-24-31(49) (emphasis added.) The statute provides for two types of nonconformance, one of which is nonconformance by use. The statute defines "nonconformance by use" as "a lawfully established use of land, building or structure which is not a permitted use in that zoning district." R.I. Gen. Laws § 45-24-31(49)(a).
Section 45-24-39 of the statute contains general provisions for nonconforming developments. This statute provides statutory protection for a nonconforming use. As such, nonconforming uses cannot be abrogated by the adoption of or amendment of a zoning ordinance. Sections 45-24-39(A) (B) of the statute expressly provide:
 "(A) Any city or town adopting or amending a zoning ordinance under this chapter shall make provision therein for any use, activity, structure, building, or sign or other improvement, lawfully existing at the time of the adoption or amendment of the zoning ordinance, but which is nonconforming by use or nonconforming by dimension. The zoning ordinance may regulate development which is nonconforming by dimension differently than that which is nonconforming by use. (B) The zoning ordinance shall permit the continuation of nonconforming development. However, this shall not prohibit the regulation of nuisances."
Similarly, the Providence Ordinance permits the continuance of those nonconforming uses which were "lawfully established." Section 201.2 of Ordinance, entitled "Continuance of use," provides:
 "Nothing in this ordinance shall prevent or be construed to prevent the continuance of a nonconforming use of any building or structure for any purpose to which such building was lawfully established."
A use must have been lawful, prior to a change in the zoning ordinance, for that use to attain protected nonconforming use status after the change. Town of Scituate v. O'Rourke, 103 R.I. 499, 239 A.2d 176 (1968) (noncompliance with the requirements of an automobile junkyard ordinance prevented landowners from attaining status of a valid nonconforming use).
Upon reviewing the record, this Court finds that plaintiffs do not enjoy a legal nonconforming use for the presentation of adult entertainment on the Property located at 31-35 Aborn Street in Providence. Even if the plaintiffs were presenting adult entertainment before April of 1991,[4] they were doing so illegally and not in conformance with the Ordinance. The plaintiffs' establishment was located in a C-3 zone, an area where live entertainment was not a permitted use. In April of 1991, JR, as owners, and Twelve Caesars appeared before the Board to seek permission to be relieved from Ordinance Section 53A, under Sections 91 and 92, in proposing to use the subject building, located at 31-35 Aborn Street, as a lounge with live entertainment. The Board granted plaintiffs' request for live entertainment, but expressly prohibited adult entertainment on the Property. Even if plaintiffs used the Property prior to 1991 for adult entertainment, therefore, that use would have been unlawful and cannot constitute a legal nonconforming use. The defendant's argument with respect to abandonment, therefore, is rendered moot.
 Estoppel
The plaintiffs next argue that the doctrine of estoppel precludes the City from prohibiting adult entertainment as a lawful nonconforming use of the Property. Specifically, plaintiffs contend that they have a protected interest in presenting adult entertainment because the Board of Licenses regularly issued disco/go go licenses to them both before and after the 1991 amendment of the Ordinance. Further, plaintiffs contend that they relied on the aforementioned licenses and, as such, have made substantial investments and expenditures with respect to renovating and upkeeping the Property.
The elements of equitable estoppel were articulated by the Rhode Island Supreme Court in Providence Teachers Union v. Providence School Board:
 "The indispensable elements of equitable estoppel, or estoppel in pais, are: `first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his [or her] injury.'"
689 A.2d 388, 391-92 (R.I. 1997) (quoting Lichtenstein v. Parness,81 R.I. 135, 138, 99 A.2d 3, 5 (1953)). Relief under this equitable doctrine is extraordinary and will not be permitted except in the unusual instance where the equities are clearly balanced in favor of the party who is seeking relief. See Loiselle v. City of East Providence,116 R.I. 585, 359 A.2d 345 (1976) (court refused to enforce estoppel doctrine against city, even when city allowed two years to pass before enforcing six-month residency requirement, where there was no evidence to support plaintiff's contention that he had been denied employment opportunities because of his deferred entry into the job market and where plaintiff took no action to resolve his problem until three days before he was scheduled to be fired).[5] Notwithstanding considerations of equity, however, estoppel will not lie as against a municipality when a municipality's actions, upon which the estoppel claim is premised, are ultra vires. Technology Investors v. Town of Westerly, 689 A.2d 1060, 1062 (R.I. 1997) (held that town was not estopped from denying property tax abatement promised to business by town council because the abatement was illegal and ultra vires under state law).
After a review of the record and relevant case law, this Court finds that the doctrine of estoppel is inapplicable here. It is undisputed that entertainment licenses were issued to Twelve Caesars and/or Jodi DiRaimo during the time period of October 1990 through October 1992.[6] These licenses, however, were issued illegally, prior to April of 1991, as plaintiffs had not, up until that point, obtained a use variance to allow them to hold live entertainment in a C-3 zone. See Technology Investors, supra; see also Ordinance § 805.[7] Plaintiffs implicitly recognized the illegality of using the Property for live entertainment when they applied, in April 1991, for a use variance. In April of 1991, the Board issued JR a use variance to allow for live entertainment on the Property but with an express prohibition against adult entertainment. Thereafter, any license arguably issued to plaintiffs to permit adult entertainment also was illegally issued. As such, any action by the municipality in issuing licenses that could be construed as permitting adult entertainment on the Property must be deemed to be ultra vires and thus cannot support a claim of estoppel by plaintiffs as against the municipality.[8]
Moreover, plaintiffs have not demonstrated that they reasonably relied to their detriment on the issuance of any entertainment licenses to present adult entertainment. See, e.g., Technology Investors, 689 A.2d at 1062. JR, as owner of the Property, appeared before the Board in 1991, seeking a use variance to allow it to present "live entertainment" on the Property at Twelve Caesars. Mr. Shappy testified that he was present at that April 1991 hearing. (Tr. dated Nov. 4, 1997 at 14.) In doing so, plaintiffs implicitly recognized the illegality of using the Property for live entertainment absent zoning relief. Mr. Shappy also testified that he "believe[d]" that he had seen Resolution No. 7371. (Id. at 16.) Resolution No. 7371 expressly prohibited adult entertainment on the Property. From the evidence of record, therefore, this Court finds that plaintiffs could not have reasonably relied to their detriment on the issuance of any entertainment license which arguably permitted adult entertainment on Property that could not be used legally for live entertainment, particularly where they recognized that illegal use by applying for zoning relief in April 1991. Similarly, plaintiffs could not have reasonably relied to their detriment on the issuance of any entertainment license which arguably permitted adult entertainment in violation of Resolution No. 7371, as they had knowledge of that use restriction and failed to appeal it. This Court believes that plaintiffs, in operating their establishment, acted at their peril in presenting adult entertainment and understood the risks associated with using the Property for that purpose. As such, equitable relief is not warranted.
 Conclusion
After a review of the entire record, this Court finds that the Board's decision is supported by the substantial, reliable and probative evidence of record and is not affected by error of law. The decision does not prejudice substantial rights of the plaintiffs. Accordingly, plaintiffs' appeal is denied, and the decision of the Board is affirmed.
Counsel shall prepare a mutually acceptable form of order and judgment, consistent with this decision, and submit it to the Court forthwith for entry.
[1] The record contains copies of the various entertainment licenses issued to Jodi DiRaimo and/or Twelve Caesars during the time period of October 1990 through October of 1992. See n. 6, infra.
[2] Hereinafter, the term "Zoning Ordinance" will be referred to as "Ordinance."
[3] The Ordinance was amended again in 1994. See DiRaimo v. City of Providence, 714 A.2d 554, 556, n. 2 (R.I. 1998). The current definition of adult entertainment provides:
 "Any commercial establishment or business where any individual, employee, operator or owner works or performs in the nude. Nudity means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple and below, or showing of the covered male genitals in a discernibly turgid state. Adult entertainment shall also be construed to mean actual or simulated acts of sexual activity by clothed or nude individuals and includes both `live' exposure and film, video, or any type of reproduction of such human anatomy and sexual activity."
See Ordinance § 1000.8.
[4] It should be noted that the Board found insufficient evidence that the Property was used for adult entertainment prior to 1991. On the state of the record (which includes no applications or licenses issued for adult entertainment during that time period), this Court cannot conclude that such finding is clearly erroneous. See n. 6, infra.
[5] See also Greenwich Bay Yacht Basin Assoc. v. Brown, 537 A.2d 988
(R.I. 1988) (with sufficient evidentiary basis, estoppel could be applicable against an administrative agency where an application should have been considered under then-existing regulations as opposed to regulations subsequently promulgated); Schiavulli v. School Committee of North Providence, 114 R.I. 443, 334 A.2d 416 (1975) (estoppel applicable to prevent a school committee from denying that a teacher's absence was the result of her being on a leave of absence when school superintendent had told teacher that he would relay her request for a leave of absence and the committee failed to act without informing teacher); Ferrelli v. Department of Employment Security, 106 R.I. 588, 261 A.2d 906 (1970) (holding that the doctrine of estoppel could be applied as against public agencies where the agency or officers thereof, who were acting within the scope of their authority, had made representations which caused a party to act or refrain from acting to his or her detriment and remanding the case for findings as to whether representations had been made by agency employee acting within his authority).
[6] The licenses were issued in the following months for the following purposes: The October 1990 license was issued to Jodi DiRaimo to "hold a disco/entertainer [or] performers." The February 1991 license was issued to Jodi DiRaimo d/b/a — Twelve Caesars to "hold disco performances." The March 1991 license was issued to Jodi DiRaimo for a "disco/performances/gogo." The April 1991 license was issued to Jodi DiRaimo to hold a "disco/gogo." The May 1991 license was issued to Jodi DiRaimo for a "disco/gogo." The June 1991 license was issued to Jodi DiRaimo for a "disco/gogo." The October 1991 license was issued to Jodi DiRaimo for a "disco/gogo." The November 1991 license was issued to Jodi DiRaimo to hold a "disco/gogo." The December 1991 license was issued to Jodi DiRaimo to hold a "gogo/disco/performances." The January 1992 license was issued to Jodi DiRaimo to hold a "gogo/disco." The February 1992 license was issued to Jodi DiRaimo to hold a "disco/gogo." The March 1992 license was issued to Jodi DiRaimo to hold a "gogo/disco." The April 1992 license was issued to Jodi DiRaimo/Twelve Caesars to "have music/D.J./gogo/disco." The May 1992 license was issued to Twelve Caesars Ltd. to hold a "gogo/disco." The June 1992 license was issued to Jodi DiRaimo to hold a "gogo/disco." The September 1992 license was issued to Jodi DiRaimo to hold a "gogo/disco." The October 1992 license was issued to Twelve Caesars to hold a "gogo/disco."
[7] Section 805 of the Providence Zoning Ordinance provides:
 Section 805. Conflicts of law.
 "All departments, officials and public employees of the city which are vested with the duty or authority to issue permits or licenses shall conform to the provisions of this ordinance and shall issue no permit or license for any use, building or purpose if the same would be in conflict with the provisions of this ordinance. Any permit or license, issued in conflict with the provisions of this ordinance shall be null and void."
[8] This case is distinguishable, therefore, from the estoppel cases on which plaintiffs rely. See A. Ferland Sons v. Zoning Board of Review,105 R.I. 275, 251 A.2d 536 (1969); Tantimonaco v. Zoning Board of Review, 102 R.I. 594, 232 A.2d 385 (1967); and Shalvey v. Zoning Board of Warwick, 99 R.I. 692, 210 A.2d 589 (1965). These cases support the proposition that where a use was lawful when a permit or exception was granted, a party may be immunized, in certain situations, against a subsequent revocation or impairment resulting from an amendment to a zoning ordinance. See also Jones v. Rommell, 521 A.2d 543 (R.I. 1987); Glocester v. Olivo's Mobile Home Court, Inc., 111 R.I. 120, 300 A.2d 465
(1973). As any licenses issued to plaintiffs here never lawfully permitted adult entertainment, application of the doctrine of estoppel is barred as a matter of law.