**DELBONIS SAND & GRAVEL CO. et al.**

v.

**TOWN OF RICHMOND.**

No. 2005–89–Appeal.

Supreme Court of Rhode Island.

Nov. 16, 2006.

Kelly M. Fracassa, Westerly, for Plaintiffs.

Michael L. Cozzolino, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

OPINION

Justice FLAHERTY, for the Court.

The plaintiffs, Delbonis Sand & Gravel Co. and Frank Delbonis (Delbonis or plaintiffs), appeal the judgment of the Superior Court for Washington County in favor of the defendant, the Town of Richmond (the town or defendant). The plaintiffs had sought declaratory judgment and the issuance of a writ of *mandamus* with respect to the merger by the town's tax assessor of eleven two-acre lots into four four-acre lots and a single six-acre lot under the terms of an ordinance providing for merger of substandard lots in common ownership.[1] Delbonis asked the Superior Court to declare that the town's actions were illegal and to order the town to redraw the tax assessor's plat with the eleven two-acre lots. A justice of the Superior Court found in favor of defendant, and plaintiffs timely appealed. Before this Court, plaintiffs argue that the Superior Court should have extended our previous holdings with respect to equitable rights in issuing building permits to the subdivision approved in this case. For the reasons stated herein, we affirm the judgment of the Superior Court.

I

Facts and Travel

The plaintiffs are the owners of numerous acres of land running along both the east and west sides of Beaver River Road in the Town of Richmond. Between 1986 and 1991, plaintiffs navigated their way through the town's subdivision process to create a development called "Delbonis Estates." The plan called for the land on the east side of Beaver River Road to be divided into eleven two-acre lots.[2] Final approval of the subdivision was granted by the town's planning commission on Feb. 23, 1990, and the lots were recorded in the

---

1. The merger ordinance in effect at the time the lots were merged read:

 "*18.20.040 Contiguous lots under single ownership.*
 A. If two or more contiguous lots are under single ownership on the effective date of the ordinance codified herein, such lots shall be considered to be an undivided parcel of land for the purpose of this chapter, and no single lot or portion thereof shall be used in violation of the requirements of this chapter as to lot line side and area.
 B. No parcel, tract or lots of land contiguous to each other and under single ownership shall be subdivided in a manner where the lot line side or area is below the requirements fixed by this chapter. No yard or open space provided around any building for the purpose of complying with the provisions of this chapter shall again be used as a yard or open space for any other buildings." Richmond R.I. Mun.Code § 18.20.040.
 Section 18.20.030 carves out an exception to zoning requirements if the non-conforming lot was recorded at the time of the ordinance amendment. However, as our opinion in *Brum v. Conley*, 572 A.2d 1332, 1335–36 (R.I. 1990), explains, owners of contiguous lots are not subject to the exception to the zoning requirements because the merger ordinance will apply.

2. "Delbonis Estates" also included land on the west side of Beaver River Road that was subdivided into twenty two-acre lots. Those lots are not relevant to this case.

town's land evidence records.[3] Both parties agree that, at all times during the subdivision approval process, up to and including the date of final approval, the town's zoning ordinance called for a minimum lot size of two acres.[4] It is significant that since the subdivision of "Delbonis Estates" was approved, plaintiffs have continued to hold title to the real estate, no structures have been built on any of the lots, and plaintiffs have not applied for any building permits.

Furthermore, a provision of the town's subdivision ordinance required plaintiffs to convey land to the town to be dedicated for municipal use. The amount of land that had to be conveyed to the town was determined by a formula set forth by ordinance. *See* Richmond, R.I. Mun.Code § 17.20.150. Here, as a condition of subdivision approval, plaintiffs were required to convey 19.34 acres to the town for "Town of Richmond Recreational Purposes" and 1.25 acres for "Town Purposes."

Effective September 1990, the town amended its zoning ordinance, increasing the minimum lot size in the area from two acres to three acres. The plaintiffs did not appeal or otherwise challenge the amendment. Because other ordinances required

the merger of substandard lots that were contiguous and under the same ownership, the tax assessor redrew the lot lines such that eight of the eleven two-acre lots on the east side of Beaver River Road were merged into four four-acre lots. The remaining three two-acre lots were merged into one six-acre lot. *See* Richmond, R.I. Mun.Code §§ 18.20.030 & 18.20.040. These actions brought the subdivided lots in "Delbonis Estates" into conformity with the new three-acre minimum lot size.

It was not until 1999 that plaintiffs brought an action in the Superior Court seeking a declaratory judgment that the actions of the town were illegal, as well as a writ of *mandamus* to compel the assessor to redraw the map to reflect the eleven two-acre lots. The linchpin of plaintiffs' argument was that they had acquired a permanent right to the original subdivision under the zoning ordinances in place at the time the town gave its approval for "Delbonis Estates." The trial justice did not agree, and he entered judgment for the town on July 6, 2004. He ruled that the town merged the lots legally under the applicable ordinances and that no right had accrued to plaintiffs to continue apply-

---

**3.** In 1991, after the final approval of the subdivision in this case, the General Assembly enacted G.L. 1956 chapter 24 of title 45, known as the "Rhode Island Zoning Enabling Act of 1991." P.L. 1991, ch. 307, § 1. In 1992, the General Assembly passed G.L. 1956 chapter 23 of title 45, entitled "Rhode Island Land Development and Subdivision Review Enabling Act of 1992." P.L. 1992, ch. 385, § 1.

**4.** During the pendency of this appeal, this Court granted plaintiffs' motion to supplement the record with the zoning ordinances in effect at the time plaintiffs received approval of its subdivision plan. Article I, Rule 10(f) of the Supreme Court Rules of Appellate Procedure states:

"*Correction or Modification of the Record.* If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the Supreme Court, or the Supreme Court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the Supreme Court."

ing the standards of the pre-amendment zoning ordinances to the subdivision.

## II

## Standard of Review

 This case was tried upon a set of stipulated facts. Review of the trial justice's decision in these cases is "narrowly defined." *Hagenberg v. Avedisian,* 879 A.2d 436, 441 (R.I.2005). Consequently, the trial court does not play a fact-finding role, but is limited to "applying the law to the agreed-upon facts." *Id.* "If the trial justice is called upon to resolve mixed questions of law and fact, we accord those findings deference." *Id.* (citing *Casco Indemnity Co. v. O'Connor,* 755 A.2d 779, 782 (R.I.2000)). However, "questions of law and statutory interpretation are reviewed *de novo* by this Court." *Id.* (quoting *Webster v. Perrotta,* 774 A.2d 68, 75 (R.I.2001)).

## III

## Analysis

Delbonis argues that the trial justice erred when he did not extend our holding in *Shalvey v. Zoning Board of Review of Warwick,* 99 R.I. 692, 210 A.2d 589 (1965), to the subdivision approved by the town. In *Shalvey,* we held that a landowner who received a building permit for a legal use that is later rendered illegal by amendment to the zoning ordinance possessed an equitable right to enjoy that use if, and only if, "the permittee in reliance upon the permit has made substantial investment or expenditure." *Id.* at 699, 210 A.2d at 593 (quoting *Morris v. Postma,* 41 N.J. 354, 196 A.2d 792, 797 (1964)). The plaintiffs urge that the lots should not have been merged by the tax assessor because by conveying the required amount of land to the town he acquired an equitable right to maintain the subdivision under the zoning ordinance as it existed at the time that it was approved.

The town counters with two arguments. First, the town contends that plaintiffs are estopped from arguing that the land dedication satisfies the requirement of "substantial investment or expenditure" because that argument was not raised at trial. Second, it maintains that the merger provision was properly applied because, even though plaintiffs had a right to develop "Delbonis Estates" under the two-acre minimum lot ordinance when that subdivision plan was approved, the land dedication was not a substantial expenditure made in reliance on the approval. Therefore, the town says, that right does not continue into perpetuity, nor does it immunize the landowner from future changes to the municipal zoning code. The town argues that the trial justice was correct when he determined that plaintiffs' failure to begin any construction on the land, or even to pursue any building permits for any of the lots, obligated the town to merge the lots to bring them into compliance with the new three-acre minimum lot-size standard. Before we review the merits of the trial justice's decision, we first will address whether plaintiffs properly preserved their argument for appeal.

## A

## Propriety of Plaintiffs' Argument

 "Under this Court's well established 'raise or waive' rule, an issue that has not been raised and articulated previously at trial is not properly preserved for appellate review." *State v. Snell,* 892 A.2d 108, 123 (R.I.2006) (quoting *State v. Gomez,* 848 A.2d 221, 237 (R.I.2004)). The defendant contends that plaintiffs did not assert in the trial court that the donation of land to the town was an obligation or expenditure that they incurred in reliance

on the previous zoning ordinance. We do not agree.

Paragraph five of the stipulated facts states, in pertinent part: "As part of the approval process, DelBonis [sic] Sand and Gravel dedicated and deeded 19.34 acres to the Town of Richmond Recreational Purposes and 1.25 acres of land along the easterly portion of Beaver River Road Town Purposes [sic]." Furthermore, in its memorandum of law to the trial justice, Delbonis expressly asserted that the dedication of land represents a "substantial obligation[ ] in good-faith reliance upon the previous ordinance." Thus, in our opinion, plaintiffs sufficiently raised and argued this issue to the trial court. See Pleasant Management, LLC v. Carrasco, 870 A.2d 443, 446 n. 4 (R.I.2005). Therefore, we turn our attention to the merits of plaintiffs' appeal.

## B

### Equitable Rights based on Prior Zoning

■ We have held that when a municipality amends a zoning ordinance in a manner such that a once permitted use becomes illegal, the amendment can result in the revocation of permits that were issued under the previous ordinance. A. Ferland & Sons, Inc. v. Zoning Board of Review of East Providence, 105 R.I. 275, 278, 251 A.2d 536, 538 (1969). However, we also have held that when the permittee has incurred substantial obligations or made significant expenditures in reliance on the permit, or, if the actions of the permittee in reliance on the permit were such that equity favored his interest to that of the municipality, then he retained an equitable right to develop the subject land as if it were governed by the previous zoning law. A. Ferland & Sons, Inc., 105 R.I. at 279, 251 A.2d at 538; Tantimonaco v. Zoning Board of Review of Johnston,

102 R.I. 594, 597, 232 A.2d 385, 387 (1967); Shalvey, 99 R.I. at 699, 210 A.2d at 593. A brief discussion of the cases that developed that body of law is warranted here.

In Shalvey, 99 R.I. at 693, 210 A.2d at 590–91, a developer sought and received building permits to construct multifamily homes—a permitted use—on four lots in Warwick. Some objectors appealed the issuance of the permits to the zoning board of review, and during the pendency of the appeal, the city council amended the zoning ordinance to allow only single-family homes in the area in question. Id. at 694–95, 210 A.2d at 591. The zoning board denied the appeals, reasoning that the building inspector already had issued the building permits, but it made no finding as to whether the permittee incurred any obligations or expenditures in reliance on the permit. Id. The dispute eventually found its way to this Court. Id.

On appeal, this Court observed that it had not previously addressed whether a zoning amendment could authorize the revocation of a building permit issued for a formerly permitted use. Shalvey, 99 R.I. at 695, 210 A.2d at 591–92. We analyzed two cases, Harrison v. Hopkins, 48 R.I. 42, 135 A. 154 (1926), and Elmcrest Realty Co. v. Zoning Board of Review of Warwick, 78 R.I. 432, 82 A.2d 846 (1951), in which permits were issued, construction began, and then the applicable zoning ordinances were changed to render the use illegal. Shalvey, 99 R.I. at 696, 210 A.2d at 592. In those cases, we held that it was inequitable to prevent a landowner from completing construction commenced pursuant to a lawfully obtained building permit. Id. However, we did not pass on the question of whether the zoning change itself could authorize the revocation of a previous lawful permit. In Shalvey, relying on our prior holdings as well as per-

suasive authority from other jurisdictions, we held:

"It is * * * our opinion that building permits lawfully issued for a permitted use should be immune to impairment or revocation by reason of a subsequent amendment to the zoning ordinance when the holders thereof, acting in reliance thereon in good faith, initiate construction in some reasonable substantial measure or incur some reasonable substantial obligation promoting such construction." *Id.* at 699, 210 A.2d at 593–94.

Our decision in *Tantimonaco* further defined the types of obligations and expenditures that could secure an equitable right. In that case, the zoning board approved and the building inspector issued a special permit for the construction of a gas station. *Tantimonaco*, 102 R.I. at 596, 232 A.2d at 386–87. The issuance of the building permit was appealed to the zoning board by neighboring residents, and, after the special permit again was approved, the case came to this Court by writ of certiorari. *Id.* While the case was pending before this Court, the town council amended the zoning ordinance, changing the classification of the site of the proposed gas station from business to residential, thus making a gas station an illegal use. *Id.* at 597, 232 A.2d at 387. The record revealed that the landowners had incurred substantial expenses before receiving the permit, both for legal fees associated with obtaining the permit and for work done to make the land suitable for the gas station. *Id.* at 598, 232 A.2d at 387. From these facts, this Court held that the expense of preparing the land before the permit was issued was an expense "promoting construction" under the rule announced in *Shalvey*. *Tantimonaco*, 102 R.I. at 601–02, 232 A.2d at 389–90. In arriving at this conclusion, we noted that expenses incurred before the building permit was issued were properly con-

sidered because the proposed use on the site, a gas station, was a permitted use under the zoning code as it existed at the time. *Id.* at 602, 232 A.2d at 389. We concluded that the landowner justifiably had relied on the existing code when he incurred those expenses, even though they were made before the building permit was issued. *Id.* Under those circumstances, we held that the owners had an equitable right to build the gas station.

Two years later, this Court decided a case very similar to the case before us now. In *A. Ferland & Sons, Inc.*, the zoning board of review granted a special permit to a landowner that allowed the construction of an eight-unit apartment building. *A. Ferland & Sons, Inc.* 105 R.I. at 276, 251 A.2d at 537. The zoning board attached several conditions, one of which was that construction was to begin within six months of the board's approval. *Id.* But, shortly after the "special permit" was issued, certain remonstrants appealed. *Id.* While that appeal was pending, the city council amended the zoning ordinance and "special permits" no longer were allowed. *Id.* Notably, the landowners had not begun construction, nor had they applied for a building permit sanctioned by the "special permit" while the appeal was pending. *Id.* at 279, 251 A.2d at 538. Eventually, after the appeal of the zoning board decision was dismissed by this Court, the landowners applied for a building permit but their application was denied because the intended use did not comply with the amendments enacted while the appeal was pending. *Id.* at 276, 251 A.2d at 537. The landowners then appealed the denial of the building permit. *Id.* That dispute eventually reached this Court. We held that the landowners had not incurred any obligations in reliance on the "special permit," but merely had applied for a building permit. *Id.* at 279, 251 A.2d at 538. There-

fore, the appeal challenging the issuance of the "special permit" did not immunize the permit from a revocation occasioned by a later zoning amendment.

In the case now before us, plaintiffs sought and received approval for a subdivision based on a zoning ordinance that called for a minimum lot size of two acres. After the plan was approved, the zoning ordinance was amended, increasing the minimum lot size to three acres. The plaintiffs argue that their obligation to convey land to the town, with the amount of land to be conveyed based on the number of lots in the subdivision, was both substantial and was incurred in reliance on the approval of the subdivision. We disagree. The donation of land under the town ordinance in effect at the time of the subdivision application was a condition of approval.[5] The plaintiffs presented no evidence that any expenses were incurred to prepare the land to be developed, as was the case in *Tantimonaco*. *See Tantimonaco*, 102 R.I. at 598, 232 A.2d at 387–88. In stark contrast to the situation in *Tantimonaco*, plaintiffs in this case obtained approval to develop the land but then did nothing with it. *See A. Ferland & Sons, Inc.* 105 R.I. at 279, 251 A.2d at 538. Indeed, plaintiffs have not been prevented from developing its land at all. Delbonis still has five buildable lots on the east side of Beaver River Road as part of its subdivision that meet the zoning requirements for residential development. In our opinion, the mere fact that plaintiffs gained subdivision approval under the provisions of a particular zoning ordinance did not guarantee that those provisions would regulate that land forever or that the municipality was precluded from changing them.

*See id.* at 278, 251 A.2d at 538. To secure an equitable right to preserve an approved plan in the face of a later zoning amendment, it was necessary for plaintiffs to demonstrate that they incurred substantial obligations or expenditures in reliance on the approval. *See Shalvey*, 99 R.I. at 699–700, 210 A.2d at 593–94. Here, plaintiffs did only what they were obligated to do to secure the subdivision approval and nothing more. No construction was commenced by plaintiffs and no building permits were sought. The record is devoid of evidence that plaintiffs took any action in reliance on the permit. Accordingly, they had no equitable right to maintain the two-acre lots that originally were approved in the subdivision plan, and the town lawfully merged the lots to bring them into conformity with the minimum lot-size requirements of the amended zoning ordinance.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court, to which we remand the papers in this case.

---

**5.** The plaintiffs direct our attention to a Texas case *City of Austin v. Garza,* 124 S.W.3d 867 (Tex.App.2003). Although that case does represent a situation in which the city was estopped from revoking approval of a building plan because it had accepted the benefit of donated land, we are not persuaded by the holding of the Texas court because Rhode Island law is clear on the issues before us.