**LANMAR CORPORATION, Plaintiff,**

**v.**

**Frank A. RENDINE, Individually and in his capacity as Zoning Enforcement Officer of the City of Pawtucket; and Anthony Mangione; Samuel Shlevin; Kenneth Kolek; Lucy Coughlin; Donald Goulet and Richard Riendeau, Individually and in their capacity as members of the Board of Appeals of the City of Pawtucket, Defendants.**

**Civ. A. No. 92–0277 P.**

United States District Court,
D. Rhode Island.

Jan. 11, 1993.

---

Ralph R. Ryan, Pawtucket, RI, Guy J. Wells, East Providence, RI, for plaintiff.

Matthew T. Oliverio, Edwards & Angell, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This matter is before the Court on defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction; Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted; and Fed.R.Civ.P. 12(b)(4) for insufficiency of process.

### I.

The plaintiff, Lanmar Corporation, is the owner of several parcels of land in Pawtucket, Rhode Island. On December 31, 1990, the plaintiff filed an application with the Pawtucket Board of Appeals for an exception/variance under the City's Zoning Ordinance to demolish existing structures on the land and to construct two new 48–unit apartment buildings. On February 7, 1991, the Board of Appeals unanimously approved plaintiff's application, "setting forth no time limit at which action should be taken on said approval." Plaintiff's Complaint at ¶ 15. In mid-April 1991, plaintiff began demolition of the existing buildings; demolition was completed on or about December 10, 1991.

On January 16, 1992, the Building Official for Pawtucket, Todd Olbrich, issued a building permit to plaintiff Lanmar Corporation for the construction of the apartment buildings. However, in a letter dated March 23, 1992, defendant Frank A. Ren-dine, Director of Zoning and Code Enforcement for Pawtucket, informed the plaintiff that the newly issued building permit was revoked. The letter stated in part:

> In accordance with Sections 31–78 of the Pawtucket Zoning Ordinance a time limit not exceeding six (6) months is established within which the action for which the special exception is required shall begin. Since this time limit has expired, you are hereby notified that your building permit is hereby revoked, and you are required to [file] a new application to the Board of Appeals regarding this matter.

Plaintiff's Complaint at ¶ 18. Rendine's letter also mentioned that he had received numerous complaints concerning plaintiff's property, including the storage of trucks and automobiles, and the accumulation of trash.

Following the revocation, the Board of Appeals held a closed meeting and voted to uphold the revocation. Mr. Rendine then notified plaintiff's counsel that the Board of Appeals had instructed him not to reissue the permit to the plaintiff. The progression of events are recited in the complaint in paragraphs 21–24:

21. ... Plaintiff's attorney then alleged defendant Rendine and the Board of Appeals had violated Lanmar's rights by having a private meeting with no notice to Lanmar, and vitiated Lanmar's right to appeal Rendine's decision to the Board of Appeals as prescribed by the Pawtucket ordinances. Defendant Rendine then said he would discuss this with the Assistant City Solicitor and abide by any decision rendered. Defendant Rendine then informed plaintiff's counsel that the Assistant City Solicitor had instructed him to reissue the permit, and that he, Rendine would comply with the Assistant City Solicitor's advice.

22. Defendant Rendine, by letter of April 20, 1992, reinstated the building permit issued January 21, 1992, to Lanmar Corporation for construction of 96 apartment units.

23. Defendant Rendine then discussed this matter privately with the members

of the Board of Appeals, who ordered the recision of Rendine's reinstatement letter of April 20, 1992.

24. The recision of Rendine's reinstatement of said permit was confirmed by letter of the City Solicitor of the City of Pawtucket dated April 22, 1992.

## II.

The plaintiff contends that the defendants' actions "violated the Ordinances of the City of Pawtucket, open meetings law of the State of Rhode Island, and plaintiff's civil rights, in contravention of Article Fourteen of the Articles of Amendment to the United States Constitution, and Title 42 of the United States Code Sections 1981, 1982, 1983 and 1985(3)." Plaintiff's Complaint at ¶ E, p. 9. The plaintiff principally fashions its claim as a procedural due process violation on the theory that the approval of the special exception in February 1991, acted upon by the destruction of the buildings, created a property right which was inviolate absent a pre-deprivation hearing. Secret meetings by the municipal authorities, resulting in revocation of the January 1992 building permit, deprived plaintiff of an opportunity to be heard, the process it was due.

The defendants advance several arguments why this Court should dismiss the action. First, they assert that this Court does not have subject matter jurisdiction because the plaintiff "has failed to comply with and exhaust the carefully planned statutory avenues of relief." Defendants' Motion to Dismiss at 3. For support, defendants first cite *Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985), where the court stated:

We begin by noting that this court has repeatedly said that federal courts do not sit as a super zoning board or a zoning board of appeals. *See, e.g., Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524 (1st Cir.1983); *Cloutier v. Town of Epping*, 714 F.2d 1184 (1st Cir. 1983); *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74

L.Ed.2d 385 (1982). While the Supreme Court has yet to provide precise analysis concerning claims of this sort, we feel confident that where, as here, the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983.

Defendants also rely upon *Creative Environments*, 680 F.2d at 832, n. 9, which points out that the availability of an adequate state remedy may not be enough "in the realm of equal protection involving gross abuse of power, invidious discrimination or fundamentally unfair procedures," or "where recognized fundamental constitutional rights are abridged by official action or state regulation." But where the "state has erected a complex statutory scheme and provided for avenues of appeal to the state courts, property is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed its authority under the relevant state statutes." *Id.*

In the case at hand, defendants argue that the plaintiff had adequate state remedies available. For example, under Rhode Island law "appeals to the [Zoning Board of Review] may be taken by any person aggrieved ... by any decision of the zoning officer ...," Pawtucket Revised Ordinances § 31–71(a); and "[a]ny person or persons jointly or severally aggrieved by a decision of the zoning board may appeal to the superior court for the county in which the municipality is situated....'" R.I.G.L. § 45–24–20.

The defendants' second argument for dismissal is that plaintiff has failed to allege facts amounting to a procedural or substantive due process violation. On the procedural front, defendants argue that the plaintiff has no property interest in the January 1992 building permit since it was issued pursuant to a special exception that had expired—that is, construction was not begun within six months. Therefore, it was issued illegally and under Rhode Island law an illegally issued permit may be

"nullified" at any time. *Shalvey v. Zoning Board of Review*, 99 R.I. 692, 210 A.2d 589, 594 (1965) ("an appropriate municipal officer will not be estopped from nullifying such permit issued illegally even though the holder thereof has proceeded to act pursuant to the permit.")

Additionally, defendants suggest that *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996 (1st Cir.1992), warrants immediate dismissal of the procedural due process claim. In *Rumford Pharmacy*, the plaintiff brought, among other things, a procedural due process challenge under § 1983 relating to the denial of its application for approval of a transfer of a local liquor license. The First Circuit affirmed the lower court's dismissal of the procedural due process claim. The Court stated that even assuming Rumford Pharmacy had a cognizable property interest in the liquor license, "the complaint nevertheless fail[ed] to *allege* that available remedies under Rhode Island law were inadequate to redress any deprivation resulting from appellees' eight-month delay in processing appellant's license-transfer application." *Id.* at 999 (emphasis in original).

Defendants also aver that plaintiff's complaint fails to allege a substantive due process claim. They note that the First Circuit has repeatedly held "that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process." *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 31 (1st

Cir.1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1151, 117 L.Ed.2d 400 (1992).

Lastly, defendants contend that plaintiff's claim must be dismissed because the City of Pawtucket was not served with notice as required by R.I.G.L. § 45–15–5, which requires persons seeking monetary compensation from a city or town to present their claim to the town or city council at least 40 days before commencing a lawsuit.[1] Plaintiff's failure to comply with this statute, defendants maintain, requires dismissal for insufficiency of process under Rule 12(b)(4).

### III.

■ A complaint will not be dismissed under Fed.R.Civ.P. 12(b)(6) unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).[2] Further, in making this determination, a court should accept the well-pleaded complaint as true and indulge every reasonable inference in favor of the plaintiff. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990). In the present case, plaintiff has alleged sufficient facts to support a § 1983 procedural due process claim.

---

1. Section 45–15–5 provides:
   Every person who shall have any money due him or her from any town or city, or any claim or demand against any town or city, for any matter, cause, or thing whatsoever, shall take the following method to obtain the same: The person shall present to the town council of the town, or to the city council of the city, a particular account of that person's claim, debt, damages, or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made him or her by the town or city treasurer of the town or city within forty (40) days after the presentation of the claim, debt, damages, or demand, the person may commence his or her action against the treasurer for the recovery of the same.

2. The defendants' argument that this suit can be dismissed under Fed.R.Civ.P. 12(b)(1) confuses the district court's authority to hear this case with the adequacy of the complaint and the plaintiff's ability to prevail on the merits. *Ortiz De Arroyo v. Barcelo*, 765 F.2d 275, 279 (1st Cir.1985). "Subject matter jurisdiction does not depend on the plaintiff['s] ability to prove the elements of their cause of action in [its] complaint." *Id.* Rather, the complaint must simply demonstrate that the matter in controversy arose under the Constitution or the laws of the United States, and that the alleged claim is not "'wholly insubstantial and frivolous.'" *Id.* at 279 and n. 6 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). The plaintiff in this case easily satisfies this criteria. For completeness, however, I will consider defendants' "jurisdictional" arguments in my discussion of plaintiff's alleged failure to state a claim.

To establish a procedural due process claim under § 1983, the plaintiff Lanmar Corporation must allege that: (1) it has a property interest as defined by state law; and (2) the defendants, acting under the color of state law, deprived it of that property interest without constitutionally sufficient process. *PFZ*, 928 F.2d at 30.

"Under Rhode Island law, the issuance of a building permit confers vested rights which may not be revoked where substantial construction has been undertaken in reliance on the permit." *P.L.S. Partners, Women's Medical Center of Rhode Island, Inc. v. City of Cranston*, 696 F.Supp. 788, 798 (D.R.I.1988) (citing *Tantimonaco v. Zoning Board of Review*, 102 R.I. 594, 232 A.2d 385, 386, 389 (1967)). Accepting as true all of plaintiff's factual allegations, it has a property right in the building permit. To be sure, there was little or no construction in the three months after the issuance of the actual building permit in January 1992. But there was substantial reliance by the plaintiff after the Board of Appeals granted it a special exception in February 1991. According to the complaint, the company spent roughly eight months demolishing the existing buildings. Moreover, there was an expectation that the building permit would be issued after the plaintiff leveled the existing buildings on the property to make room for the two new buildings. While the special exception decision does not use the word "demolition," the plaintiff's application to the Board of Appeals indicated that existing buildings would be razed.[3] Since the Board knew that buildings on the property must be removed, demolition was by implication authorized. Indeed, defendants acknowledge that the City issued a separate permit for demolition of the buildings. Supplemental Memorandum of Law In Support of Defendants' Motion To Dismiss at 2, n. 1.

Defendants' argument that plaintiff had no property interest in the January 1992 building permit because it was issued illegally must fail for two reasons. First, it appears that work commenced at the property within the meaning of the Pawtucket Ordinance. Section 31–78 of the Ordinance states that "[u]pon granting a special exception, the zoning board of review shall prescribe a time limit not exceeding six months within which the action for which the variance is required shall be begun." Defendants offer no legal support for their contention that demolition work should not be considered "action" under this provision. Further, as noted, the application to the Board of Appeals stated that demolition was necessary to complete the project. Second, even if the building permit was illegally issued under a strict reading of the Pawtucket Ordinance, the plaintiff has advanced a legitimate claim of a property interest based upon the granting of the special exception and the demolition of the buildings. Thus, on the facts presented in the complaint, the plaintiff has obtained a property interest in the building permit.

■ I now turn to the second prong of the procedural due process standard. There is no question that the defendants acted under color of state law. Thus, I must assess the adequacy of the process afforded plaintiff. In unraveling this issue, it is necessary to review the U.S. Supreme Court's latest case addressing procedural due process, *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

In *Zinermon*, the claimant was "voluntarily" admitted to a state mental hospital after he was discovered wandering along a Florida highway. After his release five months later, he brought a § 1983 action in federal court alleging that the hospital staff had deprived him of due process of law. The claimant acknowledged the availability of post-deprivation state remedies. But he claimed that the hospital staff "knew or should have known" that he was incapable of voluntary consent and that they failed to initiate Florida's statutory

---

**3.** Defendants erroneously state "that plaintiff never specified in its application the need to undertake demolition work, and therefore, the "action" to be undertaken pursuant to the exception/variance did *not* include work related to demolition." Defendants' Motion To Dismiss at 2, n. 1 (emphasis in original).

involuntary placement procedure. 494 U.S. at 121–124, 110 S.Ct. at 981–982.

A closely divided Supreme Court held that his complaint was sufficient to state a procedural due process claim under § 1983. The Court stated that in determining what procedural protections are required in a particular case, it is necessary to weigh several factors as articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):

First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substituted procedural requirement would entail.

*Id.* at 127, 110 S.Ct. at 984.

Applying this test, the Court found that it "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." 494 U.S. at 127, 110 S.Ct. at 984 (emphasis in original). The Court recognized, however, that in limited circumstances it has held that a post-deprivation hearing or a common-law tort remedy satisfied due process. One such situation was where it was "impossible" for the State to anticipate and prevent a deprivation. *Id.* at 128–130, 132, 110 S.Ct. at 984–985, 987. For example, in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that a deprivation of a constitutionally protected property interest resulting from a state actor's "random and unauthorized" conduct does not give rise to a § 1983 procedural due process claim where there are state post-deprivation remedies available. Another special circumstance was where it was "unduly burdensome" for the State to provide a pre-deprivation hearing when balanced against the interest at stake. 494 U.S. at 128, 132, 110 S.Ct. at 984, 987. In *Ingraham v. Wright*,

430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), for example, the Court held that school children were not entitled to a pre-deprivation hearing before corporal punishment.

In the present case, defendants do not argue that a pre-deprivation hearing was impossible to anticipate as in *Parratt* and *Hudson*. Rather, they contend that quick revocation was necessary before the plaintiff acted upon the permit. Defendants declare that "[t]his sense of urgency coupled with the more than adequate remedies under both administrative and state law belies any contention that a pre-deprivation hearing was required to satisfy due process." Supplemental Memorandum Of Law In Support Of Defendants' Motion To Dismiss at 6. They also assert that "[p]ost-deprivation remedies are sufficient where as here the benefit of an additional pre-deprivation hearing to the individual affected is outweighed by the cost and the impracticality of such hearing." *Id.*

I do not find these arguments convincing. Defendants do not offer any evidence that immediate revocation of the January 1992 building permit in March 1992 was necessary to prevent detrimental reliance or harm. The plaintiff had already completed eight months of demolition work on the property. The defendants also had the authority and resources to provide some type of pre-deprivation hearing to the plaintiff. They could have scheduled such a hearing in a matter of days, without considerable planning or expense.

Moreover, the First Circuit has indicated that where a building permit has been in the possession of a developer for more than a brief period of time, and the developer can show that he or she acted in reliance upon it, some type of pre-deprivation hearing is necessary before it can be revoked. *Cloutier*, 714 F.2d at 1191–1192; *Chongris v. Board of Appeals of Town of Andover*, 811 F.2d 36, 39–42 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987). I came to such a conclusion in *P.L.S. Partners, supra*, where I found a procedural due process violation following the revocation of a building permit one month after its issuance, and where the developer had taken steps during that

month in reliance on the permit. I concluded that "some kind of pre-revocation process was required." 696 F.Supp. at 798.

What about *Rumford Pharmacy?* At first blush, this case appears to thwart plaintiff's procedural due process claim because it has not "allege[d] the unavailability of constitutionally-adequate remedies under state law." 970 F.2d at 999. A close reading of *Rumford Pharmacy*, however, reveals that the First Circuit simply emphasized the relevance of state remedies in assessing procedural due process actions under § 1983. According to *Zinermon*, a claimant may invoke § 1983 regardless of the state remedies available where it involves specific protections defined in the Bill of Rights (e.g., freedom of speech, freedom from unreasonable searches and seizures), or substantive due process allegations. 494 U.S. at 125, 110 S.Ct. at 983. "As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken." *Id.* But in procedural due process cases,

> the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon*, 494 U.S. at 125–126, 110 S.Ct. at 983 (emphasis in original) (citation and footnote omitted).

Thus, state remedies are pertinent in making procedural due process determinations. And as noted above, in special instances, there is no need for pre-deprivation process if the state provides adequate post-deprivation procedures or tort remedies. *See Parratt v. Taylor, Ingraham v. Wright, supra.* In *Rumford Pharmacy*, the claimant merely alleged a due process violation because of a delay in processing a liquor license transfer application. It did not challenge Pawtucket's existing procedural scheme. Nor did it argue that it was entitled to additional pre-deprivation process. Thus, the First Circuit concluded that without alleging the inadequacy of Rhode Island remedies, "the complaint fails to allege an element critically important to a procedural due process claim *resting entirely upon* an eight-month delay in processing an application for a license to which the claimant asserts itself entitled." 970 F.2d at 999 (emphasis added).

By contrast, where a claimant can genuinely assert that it was entitled to a pre-deprivation hearing under the *Mathews* balancing test, then it need not allege the unavailability of state remedies in order to state a procedural due process claim. At this stage, the Lanmar Corporation has adequately alleged that due process required a pre-deprivation hearing before its building permit was revoked. Like the *Zinermon* Court, I do not express a view on the ultimate merits of the plaintiff's claim. I hold only that its complaint is sufficient to state a valid procedural due process claim under § 1983.

### IV.

The final issue to resolve is the significance of plaintiff's failure to comply with R.I.G.L. § 45–15–5. The U.S. Supreme Court has directly addressed this issue. In *Felder v. Casey*, 487 U.S. 131, 138–142, 108 S.Ct. 2302, 2306–2309, 101 L.Ed.2d 123 (1988), the Court determined that Wisconsin's "notice-of-claim" statute was inapplicable to § 1983 actions brought in state or federal court. The Court based its reasoning, in part, upon the principle that § 1983 claimants need not exhaust state judicial or administrative remedies before instituting their suit in either state or federal court. *Id.* at 146–150, 108 S.Ct. at

2311–2313. However, the Court noted that federal courts are required to apply notice-of-claim provisions to pendent state-law claims. *Id.* at 151, 108 S.Ct. at 2313.

Section 45–15–5 is a notice-of-claim statute within the context of *Felder.* Thus, § 45–15–5 is not a bar to this § 1983 suit. At this juncture, it is not necessary for me to determine whether the failure to comply with § 45–15–5 will prevent the plaintiff from litigating its pendent state claims. I should point out, however, that the Rhode Island Supreme Court has narrowly construed § 45–15–5. *See Town of Johnston v. Ryan,* 485 A.2d 1248, 1250 (R.I.1984) (sex-discrimination claimant did not need to comply with § 45–15–5 because the majority of the remedies available in the dispute were equitable in nature); *State of Rhode Island v. Eight Cities and Towns,* 571 A.2d 27, 29 (R.I.1990) (§ 45–15–5 not applicable in a declaratory-judgment action). These cases indicate that this type of multifaceted suit—involving a request for injunctive, declaratory and monetary relief—is probably not covered by § 45–15–5.

For all of the reasons stated above, defendants' motion to dismiss is denied.

SO ORDERED.