DECISION
This matter came on for hearing before Mr. Justice Lanphear on September 22, 2008, on Roger and Margo Malouins' motion for summary judgment, as well as Defendants *Page 2 
Clay Chipman's and West Warwick's cross-motions.[1] After hearing thereon, the Court reserved decision on all Counts and will address each one in turn at this time. Jurisdiction is pursuant to Super.R. Civ. P. Rule 56.
 Facts and Travel
This matter revolves around property located on Pawtuxet Terrace in West Warwick, Rhode Island, whereon Roger and Margo Malouin ("the Malouins") intended to build a single-family residence. Unable to do so because of zoning restrictions, the Malouins filed a Complaint against Malcolm Moore, in his capacity as Finance Director of the Town of West Warwick ("West Warwick"); Stephen D. Murray, in his capacity as Building Official for the Town; Clay Chipman, the seller of the property; and Paul Bassett and Cheryl Robin Hitte, the owners of a real estate company PC Properties LLC, also a named defendant. In their Complaint, the Malouins alleged the following claims: Count I, breach of warranty covenants against Mr. Chipman; Count II, equitably estoppel against West Warwick; Count III, procedural and substantive due process violations by West Warwick; Count IV, equitable relief against West Warwick; Count V, fraud against Mr. Chipman, Mr. Bassett, Ms. Hitte, and PC Properties LLC; Count VI, monetary damages against all defendants; and Count VII, negligence against West Warwick. The Malouins' claims against West Warwick, Mr. Chipman, and Mr. Bassett are the subject of the instant motions for summary judgment.[2]
The Malouins sought to build a single-family residence on the property which they were purchasing from Mr. Chipman. To enable them to do so, Mr. Chipman and Mr. Bassett sought various zoning approvals from West Warwick. In April 2008, Mr. Chipman filed an application for a minor subdivision. Final approval was granted on July 14, 2005. An application for a *Page 3 
dimensional variance for insufficient frontage was filed in May 2005 and was heard by the Zoning Board on June 29, 2005. At the hearing thereon, Mr. Bassett misrepresented that proper notice to abutting property owners was provided pursuant to law. On July 20, 2005, the Zoning Board issued a decision regarding a dimensional variance for insufficient frontage, which nevertheless contained a condition "[t]hat Affidavit of Notice be filed before [the] Decision shall become effective."[3] A Foundation Permit was subsequently issued on July 28, 2005, which warned "FOUNDATION ONLY AT OWNER'S PERIL!"
The Malouins purchased the property from Mr. Chipman on August 29, 2005 prior to the issuance of the Building Permit in dispute. This Permit, issued on September 7, 2005, allowed the "[b]uilding [of] a 48' x 28' Raised Ranch with 10 x 10 deck on rear of house (main fir 28 x 48, garage 24 x 26, foundation 26 x 48)." Also, noted on the Permit was the "Zoning petition 2005-031" — the conditional Zoning Decision issued July 20, 2005. On or about October 27, 2005, the Building Official for the Town of West Warwick issued a cease and desist order for all work at the property, simultaneously rescinding the Permit issued. The grounds for the revocation were threefold: failure to meet the notice requirements for the variance; failure to obtain an insignificant alteration requirement to build within the 50 foot setback requirement to a wetland; and the Malouins' building of a 10' x 10' deck that was not shown on the site plan. No certificate of occupancy has been issued.
The Malouins claim that they purchased the property from Mr. Chipman in substantial reliance of the alleged misrepresentations by Mr. Chipman and Mr. Bassett, as well as on the Foundation Permit, Building Permit, and Zoning Decision, which were issued by West Warwick. They additionally allege that West Warwick violated procedural and substantive due process by not providing them a predeprivation hearing; that West Warwick was negligent in issuing the *Page 4 
variance and permits; and that West Warwick should be equitably estopped from revoking the Building and Foundation Permits.
The Malouins filed a motion for summary judgment. West Warwick filed an objection and cross-motion, and Mr. Chipman filed an objection and cross-motion. The remaining defendants did not file objections.[4]
This matter came on for hearing, and afforded the opportunity by this Court, the Malouins filed a supplemental memorandum.
Upon finding that the Malouins and West Warwick provided the Court with conflicting copies of the Zoning Decision dated July 20, 2005 — each bearing the same book and page stamp — this Court ordered that the Malouins file a certified copy of the recorded decision on or before January 5, 2009.[5] The certified copy was untimely filed on January 22, 2009 after a status conference was held thereon.[6] The Court is finally in the position to address these motions.
 Standard for Summary Judgment
This Court will only grant a motion for summary judgment if "after reviewing the admissible evidence in the light most favorable to the nonmoving party[,]" Liberty Mut. Ins. Co. v. Kava. 947 A.2d 869, 872
(R.I. 2008) (quoting Roe v. Gelineau. 794 A.2d 476, 481 (R.I. 2002)), "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Super. R. Civ. P. 56(c). In opposing a motion for summary judgment, the nonmoving party "`has the burden of proving by competent *Page 5 
evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" Id. (quoting D'Allesandro v. Tarro,842 A.2d 1063, 1065 (R.I. 2004)). To meet this burden, "`[although an opposing party is not required to disclose in its affidavit all its evidence, he [or she] must demonstrate that he [or she] has evidence of a substantial nature, as distinguished from legal conclusions, to dispute the moving party on material issues of fact.'" Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998) (quoting Gallo v. National Nursing Homes,Inc., 106 R.I. 485, 489, 261 A.2d 19, 21-22 (1970)).
 Analysis I Breach of Warranty
In Count I, the Malouins claim Mr. Chipman breached his warranty covenants. Although the Malouins moved for summary judgment on all claims against all defendants, the Malouins failed to establish the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. See Doe v. Gelineau, 732 A.2d 43, 48
(R.I. 1999) ("[T]he moving party bears the initial burden of establishing that no genuine issue of material fact exists for a finder of fact to resolve."). Because they have not met their burden, the Malouins' motion for summary judgment on Count I is denied. Mr. Chipman also filed a cross-motion for summary judgment on all claims against him but similarly failed to discuss this claim and establish the absence of a genuine issue of material fact.[7] See id. Thus, Mr. Chipman's motion for summary judgment on this Count is, likewise, denied.
 II Equitable Estoppel *Page 6 
In Count II of their Complaint, the Malouins claim that West Warwick should be equitably estopped from revoking the Foundation Permit, Building Permit, and the July 20, 2005 Zoning Decision. "[EJquitable relief is extraordinary relief and will not be applied unless the equities [are] clearly . . . balanced in favor of the party seeking that relief." Ocean Road Partners v. State, 612 A.2d 1107, 1111 (R.I. 1992) (citing Greenwich Bay Yacht Basin Associates v. Brown, 537 A.2d 988, 991
(R.I. 1988)). In order to establish a claim of equitable estoppel, a plaintiff must prove:
 first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury. Providence Teachers Union v. Providence School Bd., 689 A.2d 388, 392
(R.I. 1997) (quoting Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)).
Significantly, "[t]he key element of an estoppel is intentionally induced prejudicial reliance." El Marocco Club, Inc. v. Richardson,746 A.2d 1228, 1234 (R.I. 2000) (quoting East Greenwich Yacht Club v.Coastal Resources Management Council, 118 R.I. 559, 568, 376 A.2d 682,686 (1977)). The Malouins failed to demonstrate their reliance.
First, with respect to the Foundation Permit, the Permit states in underlined, capital letters "FOUNDATION ONLY AT OWNER'S PERIL!" This is an express limitation, if not a warning. The mere granting of a limited license is not an affirmative representation by West Warwick with the purpose to "intentionally induce prejudicial reliance." El Marocco Club,Inc., 746 A.2d at 1234 (emphasis added). More significantly, in light of the above-quoted language, the Malouins have not established "that such representation or conduct in fact did induce the other to act or fail to act to his injury." Providence Teachers Union, 689 A.2d at 392.
Second, the Malouins allege that they purchased the property and spent over $150,000.00 in building costs relying on the Building Permit. The Malouins purchased the property on *Page 7 
August 29, 2005, and the Building Permit was not issued until September 7, 2005. The Malouins have not established how they relied on a Building Permit not yet issued and consequently, have not established and cannot establish "that such representation or conduct in fact did induce the other to act or fail to act to his injury." Providence TeachersUnion, 689 A.2d at 392.
The Malouins then rely on a rule inapplicable to these facts. Our Supreme Court has held that:
 building permits lawfully issued for a permitted use should be immune to impairment or revocation by reason of a subsequent amendment to the zoning ordinance when the holders thereof, acting in reliance thereon in good faith, initiate construction in some reasonably substantial measure or incur some reasonably substantial obligation promoting such construction. Shalvey v. Zoning Board of Review. 99 R.I. 692, 699, 210 A.2d 589, 593-94 (1965).
Stated differently, "equity immunizes a building permit from cancellation when the property owner incurs substantial obligations in good-faith reliance on the issuance of the permit." Jones v.Rommell, 521 A.2d 543, 545 (R.I. 1987). However, "this rule has only been applied to situations in which a subsequent amendment to a zoning ordinance prohibits the use authorized under the permit" or where subsequent board action has the same effect as an amendment.Id. In the case at bar, however, the Foundation Permit and Building Permit were neither revoked by a later zoning amendment nor revoked by Board action. See id. Thus, the Malouins' reliance on this rule is misplaced. The permit itself contained a clear restriction. Good faith reliance has not been shown.
In this case, the Foundation Permit and Building Permit are not immunized from cancellation. The permits may be revoked as they were unlawfully issued.[8] "[W]ith respect to *Page 8 
permits illegally issued, an appropriate municipal officer will not be estopped from nullifying such permit even though the permittee has acted pursuant to the permit." Almeida v. Zoning Board of Review of the Townof Tiverton, 606 A.2d 1318, 1321 (R.I. 1992) (citing Shalvey,99 R.I. at 700, 210 A.2d at 594). In Almeida, the Court held that the town "acted properly in revoking that portion of the permit . . . despite the fact that [the plaintiff] relied on said permit." Id,; see alsoTechnology Investors v. Town of Westerly, 689 A.2d 1060, 1062 (R.I. 1997) ("[EJstoppel cannot be applicable when the municipality's acts were clearly ultra vires.").
Lastly, the Malouins argue that West Warwick should be equitably estopped from revoking the July 20, 2005 Zoning Decision, which granted the variance. Again, the Malouins failed to demonstrate any act by West Warwick amounting to an "affirmative representation or equivalent conduct." Providence Teachers Union, 689 A.2d at 392 (quotingLichtenstein, 81 R.I. at 138, 99 A.2d at 5). The certified copy of the recorded Zoning Decision contains the stipulation "[t]hat Affidavit of Notice be filed before [the] Decision shall become effective." Thus, the Zoning Decision cannot be considered "an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon." Providence TeachersUnion, 689 A.2d at 392.[9]
When viewing the facts in the light most favorable to the Malouins, this Court finds that no genuine issue of fact exists with respect to their claim for equitable estoppel, and West Warwick is entitled to judgment as a matter of law. See Liberty Mut. Ins. Co., 947 A.2d at 872. Thus, this Court denies the Malouins' motion for summary judgment and grants West Warwick's motion as to Count II.
 III Due Process *Page 9 
In Count III of their Complaint, the Malouins claim that their procedural and substantive due process rights were violated when the Foundation Permit, Building Permit, and the Zoning Decision were revoked without any predeprivation hearing. Claims for procedural and substantive due process violations require very different analyses. "When a procedural due process claim is advanced, the proper focus must be on the manner in which the state has acted: `how and when' the alleged deprivation was effected." Amsden v. Moran, 904 F.2d 748, 753
(1st Cir. 1989). Quite differently, "a substantive due process inquiry focuses on `what' the government has done, as opposed to `how and when' the government did it." Id. at 754.
To establish either a procedural or substantive due process claim, "a deprivation of a protected property interest" must be first established.Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008);see also Rhode Island Economic Development Corp. v. The Parking Co.,L.P., 892 A.2d 87, 98 (R.I. 2006). "Under Rhode Island law, the issuance of a building permit confers vested rights which may not be revoked where substantial construction has been undertaken in reliance on the permit." P.L.S. Partners v. City of Cranston, 696 F.Supp. 788, 798
(D.R.I. 1988) (citing Tantimonaco v. Zoning Board of Review,102 R.I. 594, 232 A.2d 385, 386 (1967)). Moreover, while analyzing a claim for due process violations, "the first circuit has suggested that where the building permit has been in the possession of the developer for more than a brief period of time and the developer can show that he acted in reliance on it, some kind of predeprivation hearing is necessary before it may be revoked." Id. (citing Cloutier v. Town of Epping,714 F.2d 1184, 1189-90 (1st Cir. 1983)). For example, in P.L.S. Partners, the Court concluded that the plaintiff had a protectible property interest where the permit was revoked one month after its issuance and the developer had taken steps during that month in reliance on the permit, including commencing construction and obtaining financing.696 F.Supp. at 798. *Page 10 
In their motion, the Malouins rely on Lanmar Corporation v.Rendine, 811 F.Supp. 47, 51 (D.R.I. 1993), which reiterates these principles. In Lanmar Corporation, the U.S. District Court broadly held that "even if the building permit was illegally issued under a strict reading of the Pawtucket Ordinance, the plaintiff ha[d] advanced a legitimate claim of a property interest based upon the granting of the special exception and the demolition of the buildings." Id. The Court further found substantial reliance by the plaintiff after the Board granted a special exception. Id.
Whether the Malouins have a protectible property interest in the permits issued and thus can establish the first element of a due process violation depends on whether "substantial construction has been undertaken in reliance on the permit." P.L.S. Partners,696 F.Supp. at 798. These are factual questions that must be answered by the fact finder. West Warwick could have easily provided the Malouins with a predeprivation hearing to satisfy procedural due process, and may have been obligated to do so if the factfinder answers the questions of reliance and substantial construction in the affirmative.
There are additional factual questions to be answered with respect to the Malouins' claim for a substantive due process violation. In order "[t]o establish a violation of substantive due process, the plaintiffs must prove that the government's action was `clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" Id. (citing Sinaloa,882 F.2d at 1407 (quoting Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395
(1926))). The substantive due process standard "purports to protect individuals against state actions that . . . run counter to `ordered liberty' or that are `shocking or violative of universal standards of decency' or even `too close to the rack and the screw.'" JolicoeurFurniture Co., Inc. v. Baldelli, 653 A.2d 740, 751 (R.I. 1995) (quotingAmsden, 904 F.2d at 753-54); see e.g., L.A. Ray Realty v. Town Councilof Town of Cumberland, 698 A.2d 202, 211 (R.I. 1997) (court held that town officials' behavior in altering an improperly adopted *Page 11 
referendum and distributing it to the Planning and Zoning Boards was "egregiously unacceptable" and "outrageous"). The First Circuit has discussed that it:
 left the door slightly ajar for federal relief in truly horrendous situations. But this circuit's precedent makes clear that the threshold for establishing the requisite `abuse of government power' is a high one indeed. Nestor Colon Medina Sucesores, Inc. v. Custodio, 964 F.2d 32, 45
(1st Cir. 1992).
Assuming that this Court finds a legally protected property interest, whether West Warwick's action was "egregiously unacceptable, outrageous, or conscience-shocking" is a question of fact to be determined by the factfinder. Jolicoeur Furniture Co., Inc., 653 A.2d at 751 (quotingAmsden, 904 F.2d at 754). The Malouins have not established the absence of a genuine issue of fact on either their claim for procedural or substantive due process. See Liberty Mutual Insurance Co.,947 A.2d at 872. West Warwick has similarly failed to establish the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. See id. Accordingly, both the Malouins' and West Warwick's motions for summary judgment are denied with respect to Count III.
 IV Fraud and Misrepresentation
In Count V, the Malouins claim fraud against Mr. Chipman, Mr. Bassett, Ms. Hitte, and PC Properties LLC. Under Rhode Island law, "[t]o establish a prima facie damages claim in a fraud case, the plaintiff must prove that the defendant `made a false representation intending thereby to induce plaintiff to rely thereon' and that the plaintiff justifiably relied thereon to his or her damage.'" Travers v.Spidell, 682 A.2d 471, 473 (R.I. 1996) (quoting Cliftex Clothing Co.v. Pi Santo. 88 R.I. 338, 344, 148 A.2d 273, 275 (1959)). A misrepresentation has been defined as "any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts." Id. at 473 n. 1 (quoting Halpert v. Rosenthal. 107 R.I. 406, 413, 267 A.2d 730, 734
(1970) (quoting Restatement (First) *Page 12 
of Contracts § 470 (1932))). As the elements suggest, fraud involves an extremely fact-intensive analysis.
Because the Malouins do not discuss their claims of fraud against Ms. Hitte and PC Properties LLC, they have not met their burden in establishing the absence of a genuine issue of material fact, and thus this Court denies their motion as to these defendants. See Liberty Mut.Ins. Co., 947 A.2d at 872. With respect to their claim of fraud against Mr. Bassett, the Malouins allege that they substantially relied upon the Zoning Board's recorded decision, which the Malouins suggest was issued based upon Mr. Bassett's false statement to the Board that the notice requirement was satisfied.[10] In any event, the Zoning Decision contained a stipulation "[t]hat Affidavit of Notice be filed before [the] Decision shall become effective." No affidavit was filed.
The Malouins also allege, relying on the affidavit of Mr. Malouin, that Mr. Bassett represented and warranted at closing that the property was in conformance with the Rhode Island General Laws and all applicable provisions of the Town's Zoning Ordinances. Specifically, they claim that Mr. Bassett told them that the property received all necessary approvals and was ready to be built upon and that that notice had been provided to the abutters as required by law. The Malouins assert that they purchased the property in substantial reliance on these alleged direct statements from Mr. Bassett. However, at Mr. Bassett's deposition, when asked if he ever disclosed to the Malouins that the affidavit was never submitted, Mr. Bassett responded "Yes I did" and then repeated his answer. (Bassett Tr. 68.) Moreover, when asked if he told Mr. Malouin or his attorney that there was defective notice, Mr. Bassett responded that he "told them to the best of [his] knowledge there was no notice given to the abutters." Id." It must have been prior to closing. I don't know when." (Bassett Tr. 69.) *Page 13 
Hence, a genuine factual issue remains as to whether Mr. Bassett "`made a false representation intending thereby to induce plaintiff to rely thereon.'" Travers, 682 A.2d at 473 (quoting Cliftex ClothingCo., 88 R.I. at 344, 148 A.2d at 275). Similarly, whether the Malouins justifiably relied on the above-alleged statements to their damage is also a factual issue that remains in dispute. See Travers,682 A.2d at 473. These factual issues preclude summary judgment from being granted in the Malouins' favor.
The Malouins next allege that Mr. Chipman made a false representation through Mr. Bassett, who they contend is Mr. Chipman's agent. The Malouins claim they had been informed by Mr. Chipman through Mr. Bassett's representation that he had obtained a zoning variance permitting the construction of a single family residential dwelling and that he represented at closing that the property was in conformance with all applicable laws and ordinances. The Malouins also base this claim on the fact that Mr. Chipman provided them with a Rhode Island Real Estate Sales Disclosure Form, which represented that the property was a newly created buildable lot. The Malouins again rely solely on the affidavit of Mr. Malouin in support of their motion.
Because genuine issues of material fact exist as to whether Mr. Bassett made false misrepresentations to the Malouins, intending to induce them to rely on same, and whether the Malouins acted in justifiable reliance on any alleged representations by Mr. Bassett, it logically follows that whether Mr. Chipman committed fraud on the Malouins through Mr. Bassett as his alleged agent contains these same factual questions. Fundamentally, whether Mr. Bassett was Mr. Chipman's agent is also in dispute. Under Rhode Island law, "`[ajgency' has been defined as `the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'"Norton v. Boyle, 767 A.2d 668, 671-72 (R.I. 2001) (quoting Lawrence v.Anheuser-Busch, Inc., 523 A.2d 864, 867 (R.I. 1987)). Moreover, there are three elements required to *Page 14 
show the existence of an agency: (1) a manifestation by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) an agreement between the parties that the principal will be in control of the undertaking. Id.
Although Mr. Chipman denies that he was in an agency relationship with Mr. Bassett, the credibility of his assertion is a question of fact for the factfinder. Whether Mr. Chipman ever made the representations alleged by the Malouins or provided them with a Rhode Island Real Estate Sales Disclosure Form is also in dispute.[11] See Travers,682 A.2d at 473. Because both the Malouins and Mr. Chipman failed to establish the absence of genuine issues of material fact with respect to the Malouins' claim of fraud against him, both motions for summary judgment are denied with respect to this Count. See Liberty Mut. Ins. Co., 947 A.2d at 872.
 V Negligence
In Count VII, the Malouins claim that West Warwick was negligent as it failed to insure that the decisions made by its officials were made within the guidelines of the law. Specifically, the Malouins assert that the Zoning Board failed to adhere to notice requirements and that it was the Building Official's responsibility prior to issuance of the permits to ensure that the file was complete. In its cross-motion, West Warwick responds that the Town is immune to tort liability under the Public Duty Doctrine.
"A fundamental principle of tort law, and a dispositive one based on the circumstances of this case, is that `[a] defendant cannot be liable under a negligence theory unless the defendant owes a duty to the plaintiff" Benaski v. Weinberg, 899 A.2d 499, 502 (R.I. 2006) (citingLucier v. Impact Recreation, 864 A.2d 635, 638 (R.I. 2005) (quotingSantucci v. Citizens Bank of Rhode Island, 799 A.2d 254, 256 (R.I. 2002))). If the court finds that no such duty exists, "then *Page 15 
the trier of fact has nothing to consider and a motion for summary judgment must be granted." Carroll v. Yeaw, 850 A.2d 90, 93 (R.I. 2004) (citing Lutier, 864 A.2d at 639 (quoting Banks v. Bowen's LandingCorp., 522 A.2d 1222, 1225 (R.I. 1987))).
There is "no clear-cut formula for creation of a duty[,]" but rather whether a duty exists in a particular case is a question of law, which involves an ad hoc approach and turns on the particular facts and circumstances of a given case. Benaski, 899 A.2d at 502. In making this determination, the Court will "`consider all relevant factors, including the relationship between the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness.'" Hennessey v. Pyne,694 A.2d 691, 697 (R.I. 1997) (quoting Kennev Manufacturing Co.,643 A.2d at 206).[12] In avoiding "`definitively committing] itself to [a specific] . . . analytical approach[,]'" Ferreira v. Strack,636 A.2d 682, 685 (R.I. 1994) (quoting D'Ambra v. U.S., 114 R.I. at 649, 650-52,338 A.2d at 527, 528 (R.I. 1975)), the high Court has cautioned that the factors articulated in Banks "were case specific and should not be taken or construed to limit the scope of factors that we shall consider in future cases involving different factual situations."Ferreira, 636 A.2d at 685 n. 2.
Although no one factor is decisive, in expressing the "concept of limiting the scope of a defendant's duty according to risks he or she reasonably perceived," our Supreme Court has opined that "[t]he linchpin in the analysis of whether a duty flows from a defendant to a plaintiff is foreseeability." Sewlyn v. Ward, 879 A.2d 882, 887 (R.I. 2005). Specifically, "an adequate nexus must exist between the foreseeability of [plaintiffs] harm and the actions of the *Page 16 
defendant.'" Sewlyn, 879 A.2d at 887 (quoting Marchetti v. Parsons,638 A.2d 1047, 1051 (R.I. 1994)).
The Malouins have not come forward with any duty-triggering facts and have thus failed to establish that they are entitled to judgment as a matter of law on this claim.[13] Contrary to the Malouins' assertion,Monforte v. Zoning Board of Review of East Providence, 93 R.I. 447, 449,176 A.2d 726, 728 (1962), does not create a duty for the Zoning Board to make sure that notice requirements are met prior to issuing a decision. This case does not deal with notice; it speaks only to the deference that should be given to the Zoning Board's decision.
Rhode Island law does not specifically mandate that the Zoning Board be responsible for mailing notice to abutting owners. Although the statute requires that "[njotice of hearing shall be sent by first class mail to the applicant, and at least all those who would require notice under § 45-24-53 [,]" the statute does not specifically mandate to whom notice is to be given. Section 45-24-41; see also West Warwick Zoning Ordinance 9.5.1. The statute does set forth, however, that "[t]he cost of notification shall be borne by the applicant." Id.; seealso § 45-24-53 ("Costs of any notice required under this section shall be borne by the applicant."); West Warwick Zoning Ordinance 9.5.1.7 ("The cost of notification shall be borne by the applicant."). The Malouins argue that the Building Official negligently failed to ensure the file was complete and included proof of notice prior to issuing the Building Permit.[14] They assert in their motion that G.L. 1956 *Page 17 
§ 45-24-54 creates a duty of the Building Official to ensure that all approvals are proper and valid. Once again, § 45-24-54 does not clearly create such a duty.[15]
Utilizing the relevant factors enunciated above and considering the particular circumstances of the case before it, this Court finds that West Warwick did not owe the Malouins the duty asserted. Rather, West Warwick's building official worked solely with Mr. Chipman and Mr. Bassett, who applied for the variance and permits. An injury to a third party — the Malouins who were not the applicants to West Warwick — was simply unforeseeable to West Warwick. See Sewlyn, 879 A.2d at 887. There was simply no relationship between the Malouins and West Warwick during the approval process. See Hennessey, 694 A.2d at 697 (quotingKenney Manufacturing Co., 643 A.2d at 206).
Whether a special duty ran from West Warwick to the Malouins is also a question of law for this Court. See Kuzniar v. Keach, 709 A.2d 1050,1055 (R.I. 1998). Under "the public-duty doctrine, Rhode Island government entities enjoy immunity from tort liability arising out of their discretionary governmental actions that by their nature are not ordinarily performed by private persons." Quality Court CondominiumAssociation v. Quality Hill Development Corporation, 641 A.2d 746, 750
(R.I. 1994). Our Supreme Court has held that "the activities and the inspections that are required to ensure compliance with the state building code cannot be *Page 18 
engaged in by private enterprise" and thus such action "falls within the ambit of conduct covered by the public duty doctrine." Id.
A special duty is created when "the plaintiffs have had some form of prior contact with state or municipal officials `who then knowingly embarked on a course of conduct that endangered the plaintiffs, or they have otherwise specifically come within the knowledge of the officials so that the injury to that particularly identified plaintiff can be or should have been foreseen.'" Id. (quoting Knudsen v. Hall 490 A.2d 976,978 (R.I. 1985)). The record is devoid of any allegations or evidence that the Malouins had some form of prior contact with the building official. See Quality Court Condominium Association, 641 A.2d at 750.
Thus, this is not a case where liability may be appropriately imposed on the town. See Banks, 522 A.2d at 1226-27. Because this Court finds that West Warwick did not owe a duty, special or otherwise, to the Malouins, this Court denies the Malouins' motion for summary judgment and grants West Warwick's motion as to this Count. SeeBenaski, 899 A.2d at 502 (citing Lucier, 864 A.2d at 638).
 Conclusion
For the foregoing reasons, the Malouins' motion for summary judgment is denied in its entirety; Mr. Chipman's cross-motion is denied in its entirety; and West Warwick's cross-motion is granted with respect to Count II (equitable estoppel) and Count VII (negligence).
Counsel should submit the appropriate judgment for entry.
[1] This case has been joined with Susan Roarke v. Malcolm Moore, etal, KC-2007-0377, but the motions for summary judgment pertain only to KC-2006-0110.
[2] Although the Malouins allege fraud against Ms. Hitte — Mr. Chipman's now ex-wife — and PC Properties LLC, these claims are not the subject of the instant motion, and will be discussed later.
[3] Rhode Island law provides that "[njotice of hearing [on any application for a variance] shall be sent by first class mail to the applicant, and at least all those who would require notice under § 45-24-53." G.L. 1956 § 45-24-41.
[4] Susan Roarke also filed an objection to the Malouins' motion, which will not be considered because she is not a party to the instant case.
[5] The copy filed as Exhibit E of the Malouins' motion mysteriously lacked the condition "[t]hat Affidavit of Notice be filed before [the] Decision shall become effective[,]" which appeared on the copy filed as Exhibit B of West Warwick's motion. Rather, in the Malouins' Exhibit E, a blank space appears under the prompting language "2. The following stipulations are imposed as follows:."
[6] This Court discovered that the certified copy of the Zoning Decision does, in fact, contain the above-quoted stipulation. The Malouins do not make any suggestions or allegations in their motion as to how this condition was erased from their Exhibit E.
[7] In his cross-motion, Mr. Chipman solely focused on the Malouins' claim of fraud against him, which will be discussed in turn.
[8] Under Rhode Island law, notice of a variance hearing must be given to abutting property owners. Section 45-24-41 ("Notice of hearing shall be sent by first class mail to the applicant, and to at least all those who would require notice under § 45-24-53."). The Zoning Decision did not become effective because the stipulation "[tjhat Affidavit of Notice be filed before [the] Decision shall become effective" was never satisfied. Because the permits were issued without notice, and thus unlawfully, West Warwick was entitled to revoke them.
[9] The Malouins' production of the Zoning Decision with this critical language whited out is obviously curious. While they seek equitable relief, the Court questions whether the Malouins were the deceived or the deceptors.
[10] Mr. Bassett later testified at deposition that he responded untruthfully about providing notice. (Exhibit J, 54-60.)
[11] In his Affidavit, Mr. Chipman states that he cannot recall ever giving them such a form, although one is required by law.
[12] For example, in a failure to warn case, our Supreme Court deemed the following factors to be important:
 (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of [the] connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach. Carroll, 850 A.2d at 93 (quoting Banks, 522 A.2d at 1225).
[13] See Willis v. Omar, 954 A.2d 126, 130 (R.I. 2008) ("In granting summary judgment, the trial justice stated that `plaintiff hasn't come forward with duty triggering facts that I, as a lower court judge, can recognize and impose liability thereon.' We agree with this ruling.").
[14] The Malouins emphasize, in bold, that "[h]ad the Building Official found notice to be deficient, he would not have issued the Building Permit and the Plaintiff would not have purchased the Property because the purchase of the Property was contingent on all necessary approvals, including the Building Permit." As previously noted, the Malouins purchased the property on August 29, 2005, and the Building Permit was subsequently issued on September 7, 2005. Thus, the Building Permit cannot be the basis of the Malouins' alleged injury of purchasing the property in reliance.
[15] Rather, this section merely provides that
 [a] zoning ordinance adopted pursuant to this chapter must provide for the administration and enforcement of its provisions pursuant to this chapter. The zoning ordinance must designate the local official or agency and specify minimum qualifications for the person or persons charged with its administration and enforcement, including: (1) the issuing of any required permits or certificates; (2) collection of required fees; (3) keeping of records showing the compliance of uses of land; (4) authorizing commencement of uses or development under the provisions of the zoning ordinance; (5) inspection of suspected violations; (6) issuance of violation notices with required correction action; (7) collection of fines for violations; and (8) performing any other duties and taking any actions that may be assigned in the ordinance. In order to provide guidance or clarification, the zoning enforcement officer or agency shall, upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request. In the event that no written response is provided within that time, the requesting party has the right to appeal to the Zoning Board of review for the determination. Section 45-24-54.